[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Caster v. Columbus,* Slip Opinion No. 2016-Ohio-8394.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8394

THE STATE EX REL. CASTER *v.* THE CITY OF COLUMBUS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Caster v. Columbus,* Slip Opinion No. 2016-Ohio-8394.]**

*Mandamus—Public Records Act—R.C. 149.43—Writ of mandamus sought to obtain records of investigation leading to conviction of criminal defendant—R.C. 149.43(A)(1)(h)—Confidential-law-enforcement-investigatory-records exception to disclosure—Specific-investigatory-work-product exception of R.C. 149.43(A)(2)(c) does not extend beyond the completion of the trial for which the information was gathered—State ex rel. Steckman v. Jackson and State ex rel. WLWT-TV5 v. Leis overruled to extent they held that specific-investigatory-work-product exception continues until "all proceedings" have been fully completed—Writ granted and request for attorney fees, statutory damages, and court costs granted.*

(No. 2014-1621—Submitted April 20, 2016—Decided December 28, 2016.)

IN MANDAMUS.

_____

**PFEIFER, J.**

**{¶ 1}** This public-records case involves an attempt by an independent entity to obtain certain law-enforcement records concerning a convicted criminal defendant whose direct appeals ended more than four years prior to the making of the request for public records. We hold that the exception from the required disclosure of public records set forth in R.C. 149.43(A)(2)(c) for specific investigatory work product does not extend beyond the completion of the trial of the underlying criminal case at issue. We grant the request for a writ of mandamus, and we order other relief as stated below.

## FACTUAL AND PROCEDURAL BACKGROUND

**{¶ 2}** Relator, Donald Caster, is an Ohio attorney engaged by the Ohio Innocence Project ("OIP"), an organization whose mission is to identify, investigate, and litigate cases in which persons may have been wrongfully convicted of serious crimes. Respondent Kimberley Jacobs is Chief of the Division of Police ("DOP") of respondent the city of Columbus. Caster asserts that respondents have refused to provide copies of certain requested records.

**{¶ 3}** As part of an independent investigation into the 2007 murder conviction of Adam Saleh, Caster requested the police records related to the arrest and investigation of Saleh. In response, DOP made a blanket rejection of this request, citing *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), which held that "information assembled by law enforcement officials with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation." *Id*. at 435. DOP stated that no records would be produced until the "completion" of Saleh's criminal case, even though all appeals had been exhausted.

**{¶ 4}** The facts underlying the records request are as follows. In 2007, Saleh was convicted of the murder, kidnapping, and attempted rape of Julie Popovich and tampering with evidence; he was sentenced to 38 years to life in prison. The Tenth District Court of Appeals affirmed the convictions. This court declined jurisdiction in July 2009. *State v. Saleh*, 122 Ohio St.3d 1457, 2009-Ohio-3131, 908 N.E.2d 946. No proceedings are currently pending regarding the convictions in any court, nor were they between September 2013 and the present.

**{¶ 5}** OIP is engaged in an independent investigation into Saleh's convictions to determine whether he was wrongly convicted. Neither Caster nor OIP currently represents Saleh or any member of his family as a client. OIP cannot and does not intervene in every case it reviews; rather, it intervenes in a small percentage of those cases, and its efforts have led to the exoneration of defendants in a number of cases. OIP requests public records in some cases to determine whether a defendant is a candidate for its intervention and in some cases to determine whether other defendants may be viable alternate suspects in cases in which an inmate appears to have been wrongfully convicted. OIP will determine whether to enter into an attorney-client relationship with Saleh only after determining whether there is evidence indicating that Saleh was wrongfully convicted.

**{¶ 6}** In a letter dated September 5, 2013, OIP law-student fellows, at Caster's direction, made a public-records request of DOP for "a copy of any police records related to the arrest and subsequent investigation" of Saleh for the crimes involving Popovich, including "medical records, police reports, investigation notes, evidence reports, and any other materials compiled by the Columbus Division of Police."

**{¶ 7}** DOP responded with a letter dated September 9, 2013, rejecting the request. Citing R.C. 149.43(A)(1)(h), which excepts from disclosure under the

Public Records Act ("PRA") "confidential law enforcement investigatory records" (sometimes called "CLEIRs"), the letter stated:

> **CLEIRS Exception**: A Public Office may withhold any records that pertain to a Law Enforcement matter of criminal, quasi-criminal, civil, or administrative nature and that, if released, would create a high probability of disclosing any of the following types of information: 1.) Identity of an uncharged suspect, 2.) Identity of a confidential source, 3.) Investigatory techniques or procedures, 4.) Investigatory work product or 5.) Information that would endanger the life or physical safety of Law Enforcement personnel, a crime victim, a witness, or a confidential source. * * * State ex rel. Steckman v. Jackson, 70 Ohio St.3d 420[.]
>
> In accordance with this section, the Columbus Division of Police, in co-operation with the Franklin County Prosecutor's Office, will supply copies of records from this case, upon completion of the criminal case. * * * Your current request for public record(s) has been closed and cleared in our files. Please feel free to re-file your request after the criminal investigation and all appeals have been exhausted.

(Boldface sic.)

{¶ 8} In October 2013, Caster directed the law students to resubmit the public-records request, and they did so. DOP responded the same day with a letter virtually identical to the one sent in September. Again, DOP provided no records in response to the request.

4

**{¶ 9}** In November 2013, Caster himself submitted a records request to DOP by certified mail, explaining that there were no proceedings ongoing in Saleh's case. DOP did not respond, nor did it provide copies of any records.

**{¶ 10}** Caster filed this original action in mandamus in September 2014, and in October of that year, DOP provided him copies of some records included in the investigative file, specifically the missing-person-preliminary-investigation forms, the Franklin County Coroner's report, newspaper articles, a press release, and subpoenas. DOP continues to assert that other requested records are excepted from disclosure under R.C. 149.43(A)(1) and (2)(a) through (d) and under the holdings of *Steckman* and its progeny.

**{¶ 11}** Respondents have filed the affidavit of Jonathan Schirg, the supervisor of DOP's public-records unit, who states that he has reviewed DOP's records on the Popovich homicide investigation. He asserts that the file contains confidential law-enforcement investigatory records (including confidential investigatory techniques, procedures, and specific investigatory work product) and "the personal notes, working papers, memoranda, evidentiary findings, and similar materials compiled by the law enforcement investigators in anticipation of criminal proceedings." According to Schirg, the file also includes FBI records and identifies witnesses and confidential sources, the release of which could endanger their lives or physical safety.

**{¶ 12}** Caster has filed two supporting affidavits. One is from Randy Ludlow, a reporter for the *Columbus Dispatch*, who attaches to his affidavit a newspaper article he wrote in March 2010 regarding a change in DOP's interpretation of Ohio's public-records laws. Under the newly implemented policy, DOP would no longer release any police investigatory documents while murderers remain in prison. Previously, the article related, investigators, journalists, and relatives of both the victims and the convicted person were permitted—after the convicted person had exhausted appeals—to obtain case records.

**{¶ 13}** The second affidavit filed by Caster is from Martin Yant, who describes himself as a private investigator. He states that "[a]t least five individuals [he has] assisted were exonerated, and their convictions were reversed, as a direct result of [his] ability to obtain criminal case files held by law enforcement agencies and/or prosecutors through public records requests" under R.C. 149.43.

## LAW AND ANALYSIS

### *Mandamus*

**{¶ 14}** "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1).

**{¶ 15}** Although the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16. In addition, unlike in other mandamus cases, "[r]elators in public-records cases need not establish the lack of an adequate remedy in the ordinary course of law." *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 25.

**{¶ 16}** Therefore, Caster has correctly filed an original action in mandamus to challenge DOP's refusal to produce documents that he asserts are public records.

### *Specific Investigatory Work Product*

**{¶ 17}** DOP claims that the records Caster seeks are excepted from mandatory disclosure under R.C. 149.43(A)(1)(h) as confidential law-enforcement investigatory records. R.C. 149.43(A)(2) defines that term:

"Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;

(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

{¶ 18} Citing this court's decision in *Steckman*, DOP refused to provide copies of the records Caster sought until "completion of the criminal case," inviting Caster to refile his request "after the criminal investigation and all appeals have been exhausted." The facts of this case raise the issue that DOP's response letters did not attempt to answer: How long must a convicted defendant or a member of the public wait?

{¶ 19} We deal in this case primarily with records excepted from disclosure pursuant to the specific-investigatory-work-product exception in R.C. 149.43(A)(2)(c), which, pursuant to this court's decision in *Steckman*, provides a broad exclusion from the reach of the PRA; it includes "information assembled by

law enforcement officials in connection with a probable or pending criminal proceeding." *Steckman*, 70 Ohio St.3d at 435, 639 N.E.2d 83. In *Steckman*, this court held that records excepted from disclosure pursuant to R.C. 149.43(A)(2)(c) remain unavailable to a defendant in a criminal case who has exhausted the direct appeals of his or her conviction and seeks to employ R.C. 149.43 to pursue postconviction relief. *Id*. at 437. In *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, 360, 673 N.E.2d 1365 (1997), a case in which a television station sought investigatory work product following the convictions of two individuals, this court held that there can be no disclosure of such material "until all proceedings are fully completed."

{¶ 20} Caster cites *Perry v. Onunwor*, 8th Dist. Cuyahoga No. 78398, 2000 WL 1871753 (Dec. 7, 2000), as a case that demonstrates the practical aspects of the denial of access to records until "all proceedings" are complete. In *Perry*, a public-records mandamus action, the relator sought police records, investigative reports, witness statements, evidentiary reports, and scientific reports in relation to a criminal case in which the defendant had been convicted a number of years before. *Id*. at *2. The court held that "the confidential law enforcement investigatory records remain exempt from disclosure" as long as "the possibility of further proceedings and trials remain." *Id*. at *3. The court listed the numerous possible further proceedings that might occur even after a defendant's direct appeal is complete—"a postconviction relief petition, a motion to withdraw guilty plea, a motion for new trial based on newly discovered evidence, a new trial from a reversal on a successful application to reopen pursuant to App.R. 26(B), and federal *habeas corpus* proceedings." *Id*. These potentialities, actions not in process nor necessarily intended to be pursued by the defendant in that case, prevented the release of the records sought. The court in *Perry* set forth the cold but logical conclusion: "[A]bsent proof that no further proceedings are possible, *e.g.,* the defendant's death perhaps, a custodian of confidential law enforcement

investigatory records is under no duty to disclose them." *Id*. That is, a defendant or member of the public can access potentially exonerating material concerning a defendant only after the defendant is dead. How did we get to this point?

Steckman

{¶ 21} In *Steckman*, this court sought to bring order to a system of criminal discovery it considered broken. The court took the "opportunity to meet head-on the continuing and ever-increasing problem of the use (and attempted use) of R.C. 149.43 (public records law) as a vehicle to obtain records from law enforcement officials and the contents of the files of prosecutors in pending criminal cases." *Steckman*, 70 Ohio St.3d at 421, 639 N.E.2d 83.

{¶ 22} The court noted that criminal defendants were seeking records through public-records requests that they could not procure through Crim.R. 16 discovery as the rule existed at that time. *Id*. at 428. This led to difficulty in the lower courts, as both appellate and trial courts faced, "almost daily, demands of criminal defendants for production of records." *Id*. at 421. This court consolidated three cases in order to address the wide-ranging problems and to "bring some order out of the confusion." *Id*. at 422.

{¶ 23} The nature of former Crim.R. 16 was the source of many of the problems. This court recognized that "the rule does *not* provide for what is often called 'full,' 'complete' or 'open file' discovery." (Emphasis sic.) *Id*. at 428. This led those seeking information to search for different means: "In order to avoid the results of Crim.R. 16, some defendants (more and more we find) are resorting to the use of R.C. 149.43 to, we believe, obtain information to which they are not entitled under Crim.R. 16 *and* (and we emphasize) to bring about interminable delay in their criminal prosecutions." (Emphasis sic.) *Id.* This court noted that most death-penalty cases "routinely" included a public-records request that would add up to two years to the final determination of those cases. *Id*. There were other concerns:

The playing field is not level as there is no reciprocal right of prosecutors to obtain additional discovery beyond Crim.R. 16(C). Witness intimidation is now more real than imagined. Criminal trials are now regularly being disrupted while R.C. 149.43 procedures are pursued. It would seem that the people *also* have a right to a speedy trial—a speedy trial of an indicted defendant. Trial courts, courts of appeals and this court are consuming tremendous time and resources to review, in some cases, boxes and boxes full of records alleged to be public. Much of the information being reviewed is detrimental to the defendant, which raises yet another problem—how can a trial judge and appellate judges, who become familiar with such information, fairly judge a defendant when they have reviewed information that may not ever be admitted or even admissible as evidence? Last, but not least, are the speedy trial issues raised by defendants when it is the state appealing an order to release documents.

(Emphasis sic.) *Id.* at 428–429.

{¶ 24} In response to this state of affairs, this court held that "in the criminal proceeding itself, a defendant may use only Crim.R. 16 to obtain discovery." *Id.* at 429. Believing that prior decisions of this court had "hamstrung the proper administration of justice," this court also set out to "draw some bright lines in cases which involve the use of R.C. 149.43 by *any* person seeking release of records in pending criminal proceedings." (Emphasis sic.) *Id.*

{¶ 25} One area where the court chose to draw a bright line was in regard to the specific-investigatory-work-product exception in R.C. 149.43(A)(2)(c). The court in *Steckman* criticized earlier opinions of this court that had narrowed the

exception, including *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988), in which the court held that "[t]he specific investigatory work product exception, R.C. 149.43(A)(2)(c), protects an investigator's deliberative and subjective analysis, his interpretation of the facts, his theory of the case, and his investigative plans. The exception does not encompass the objective facts and observations he has recorded." *Natl. Broadcasting Co.* at paragraph three of the syllabus. *See Steckman*, 70 Ohio St.3d at 433–434, 639 N.E.2d 83.

**{¶ 26}** This court in *Steckman* related that that holding and similar ones from other cases had led to an increase in demands to courts and record keepers "to release the entire contents of a prosecutor's file *and* all the records accumulated and maintained by a police department in connection with a particular defendant and his or her criminal proceeding." (Emphasis sic.) *Id*. at 431. This court opined that because of those cases, "the exceptions to required disclosure found in R.C. 149.43(A)(2)(c)—'specific investigatory work product'—and R.C. 149.43(A)(4)—'trial preparation record'—have virtually been rendered meaningless. Additionally, these cases have, for all practical purposes, just about written Rule 16 out of the Criminal Rules." *Id*. The court stated its intention to resolve the issue: "Simply put, this chaos cannot be permitted to continue." *Id.*

**{¶ 27}** In addressing the confidential-law-enforcement-investigatory-record exception in R.C. 149.43(A)(2), and specifically, the "specific investigatory work product" exception in R.C. 149.43(A)(2)(c), the court in *Steckman* expanded the definition of work product, and it narrowed the kinds of records available as public records. This court found that it had never satisfactorily defined the term "work product"—which is undefined in R.C. 149.43—for purposes of R.C. 149.43(A)(2)(c). *Id*. at 434. The court then looked to the United States Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), which addressed work-product privilege in the context of the attorney-

client relationship. This court concentrated on the policy reasons behind work product discussed in *Hickman*, in which the United Stated States Supreme Court "indicated that proper preparation of a client's case requires that information be gathered, assembled and sorted and that theories of the case be prepared and strategy be planned 'without undue and needless interference.' " *Steckman* at 434, quoting *Hickman* at 511. This court also noted that allowing others to view the work product of an investigation could affect the quality of that investigation:

> If the product of such work is to be available merely upon demand, then there is a very real probability that certain information will remain unrecorded, witnesses' names will not be catalogued and other memoranda will be absent from the "official" files. We should not, by our rulings, create a situation where there is an incentive to engage in such conduct.

*Steckman* at 434.

{¶ 28} This court applied a definition of the work-product rule to the "specific investigatory work product" exception in R.C. 149.43(A)(2)(c):

> [W]ith regard to records assembled by law enforcement officials (including prosecutors), we now subscribe to Black's definition of "work product rule." "Under this rule any notes, working papers, memoranda or similar materials, prepared by attorneys [here, by law enforcement officials] in anticipation of litigation, are protected from discovery." Black's Law Dictionary (6 Ed.Rev.1990) 1606. This definition (working papers) is broad enough to bring under its umbrella any records compiled by law enforcement officials.

(Bracketed text sic.)  *Steckman*, 70 Ohio St.3d at 434, 639 N.E.2d 83.

{¶ 29} This court thus found that except for material required to be produced to a defendant pursuant to former Crim.R. 16, "information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work-product exception found in R.C. 149.43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation."  *Steckman* at 435.  Not included within the exception were "routine offense and incident reports."  *Id*.

{¶ 30} The extension of the investigatory-work-product exception beyond the completion of the trial finds its roots in *Steckman*'s discussion of the trial-preparation-record exception of R.C. 149.43(A)(1)(g).  R.C. 149.43(A)(4) defines trial preparation record and reads: " 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney."  The court wrote that "[i]t is difficult to conceive of anything in a prosecutor's file, in a pending criminal matter, that would not be either material compiled in anticipation of a specific criminal proceeding or the personal trial preparation of the prosecutor."  *Steckman* at 431–432.  The court concluded:

> Therefore, we now hold that information, not subject to discovery pursuant to Crim.R. 16(B), contained in the file of a prosecutor who is prosecuting a criminal matter, is not subject to release as a public record pursuant to R.C. 149.43 and is specifically exempt from release as a trial preparation record in accordance with R.C. 149.43(A)(4).

*Id*. at 432.

**{¶ 31}** This court then discussed how long records remain exempt under R.C. 149.43(A)(4) in light of that statue's definition of "trial preparation record" as a record "compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding." This court looked to the definitions of "trial," "action," and "proceeding," in *Black's Law Dictionary* and found that among the definitions, there was no distinction made between an initial court proceeding, direct appeals, and postconviction relief. *Steckman*, 70 Ohio St.3d at 432, 639 N.E.2d 83. This court then held that "once a record becomes exempt from release as a 'trial preparation record,' that record does not lose its exempt status unless and until all 'trials,' 'actions' and/or 'proceedings' have been fully completed." *Id*.

**{¶ 32}** The court acknowledged that that holding "may seem harsh" but stated that the holding was "not without good reason." *Id*. That reason was that a person convicted of a crime should not have available to him or her in postconviction proceedings any more evidence than would have been available to him or her pursuant to former Crim.R. 16 at the original trial:

> [W]e still are faced with the situation in which a defendant in a criminal case might be granted a new trial, on his or her petition for postconviction relief. Since the possibility of retrial remains, the defendant, who has obtained records during postconviction proceedings, would have on retrial more information than she or he would be entitled to possess if limited to discovery pursuant to Crim.R. 16. This, of course, could present (at best) an anomalous result.

*Steckman* at 432.

**{¶ 33}** This court did not explicitly hold in *Steckman* that the specific-investigatory-work-product exception extends beyond the completion of the trial.

14

But that was the clear implication when this court held that the records sought by Ronald Larkins—the defendant in one of the consolidated cases before it—were exempt from disclosure based on R.C. 149.43(A)(2)(c). The court concluded in resolving Larkins's case that "a defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief." *Id.* at 437 and at paragraph six of the syllabus.

{¶ 34} This court a few years later explicitly held that the specific-investigatory-work-product exception applies beyond the completion of direct appeals in *State ex rel. WLWT-TV5*, 77 Ohio St.3d 357, 673 N.E.2d 1365. This court adopted the *Steckman* reasoning regarding trial-preparation records in holding that "[a]nalogously, once applicable, the records continue to be exempt work product until all proceedings are fully completed." *WLWT-TV5* at 360, citing *Steckman* at 437. The court once again acknowledged the harshness of the holding, but reiterated *Steckman*'s reasoning that a defendant who is granted a new trial on his or her postconviction petition should not be entitled to information on retrial that he or she could not obtain though Crim.R.16 discovery. *WLWT-TV5* at 360, citing *Steckman* at 432.

*Changes to Crim.R. 16*

{¶ 35} The central reason stated in *Steckman* and *WLWT-TV5* justifying the admittedly harsh holding extending the specific-investigatory-work-product exception until all proceedings are fully completed was the seeming disparity between the information a defendant could obtain to use at retrial compared to what the defendant could obtain through discovery under former Crim.R. 16.

{¶ 36} This court reasoned—after declaring that only Crim.R. 16 could be used for discovery in a pending criminal matter—that a person convicted of a crime but granted a retrial should not have available to him or her any more evidence than

what was available at the original trial pursuant to former Crim.R. 16. *Steckman*, 70 Ohio St.3d at 429, 432, 639 N.E.2d 83; *see also WLWT-TV5* at 360.

**{¶ 37}** But Crim.R. 16 has changed significantly since it was described in *Steckman* as not providing " 'full,' 'complete' or 'open file' discovery." *Steckman* at 428. On July 1, 2010, Ohio's sweeping reform of Crim.R. 16 went into effect. Developed collaboratively by the criminal-defense bar and prosecutors, the purpose of the revisions "is to provide for a just determination of criminal proceedings and to secure the fair, impartial, and speedy administration of justice through the expanded scope of materials to be exchanged between the parties." 2010 Staff Note to Crim.R. 16(A). The new rule "expands the State's duty to disclose materials and information beyond what was required under the prior rule." 2010 Staff Note to Crim.R. 16(B). For instance, upon a defendant's written demand, the state must generally provide, prior to trial, "[a]ny written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal," Crim.R. 16(B)(7), as well as "[a]ll reports from peace officers, the Ohio State Highway Patrol, and federal law enforcement agents," Crim.R. 16(B)(6). These are two significant changes that provide defendants much more information prior to trial than under former Crim.R. 16.

**{¶ 38}** Further, pursuant to this court's decision in *State v. Athon*, 136 Ohio St.3d 43, 2013-Ohio-1956, 989 N.E.2d 1006, paragraph three of the syllabus, when an accused seeks information about his or her case through a public-records request, "that public records request is the equivalent of a demand for discovery, and a reciprocal duty of disclosure arises in accordance with Crim.R. 16." That holding led to an amendment to Crim.R. 16(H), which now includes the sentence, "A public records request made by the defendant, directly or indirectly, shall be treated as a demand for discovery in a criminal case if, and only if, the request is made to an agency involved in the prosecution or investigation of that case." *See* 2016 Staff Note to Crim.R. 16.

16

{¶ 39} Thus, changes to Crim.R. 16 have minimized any perceived advantage a defendant could gain on retrial through the use of a public-records request.

*Revisiting* Steckman *and* WLWT-TV5

{¶ 40} "R.C. 149.43 is to be construed liberally in favor of broad access, and any doubt is to be resolved in favor of disclosure of public records." *State ex rel. Gannett Satellite Information Network v. Shirey*, 78 Ohio St.3d 400, 401, 678 N.E.2d 557 (1997). We look to R.C. 149.43(A)(2)(c) to see whether it requires that the specific-investigatory-work-product exception extend beyond the trial of the case. Nothing in the statute itself suggests that the exception should last beyond the original trial.

{¶ 41} This court's prior jurisprudence in this area was based on expedience—the idea that a defendant should not be able to have more information on retrial than he or she could have gained through Crim.R. 16 discovery for the original trial. *Steckman*, 70 Ohio St.3d at 432, 639 N.E.2d 83; *WLWT-TV5*, 77 Ohio St.3d at 360, 673 N.E.2d 1365. The reworking of Crim.R. 16 has allayed those concerns.

{¶ 42} We should also be concerned with the interests of justice. Ronald Larkins was one of the appellants in the consolidated cases in *Steckman*. He had been convicted of aggravated murder, aggravated robbery, and attempted murder. His convictions and sentence were affirmed on appeal. *Steckman* at 422–423.

{¶ 43} Larkins sought from Cleveland's police chief, through an action in mandamus, the investigatory records of the crimes for which he was convicted. *Id.* at 437. In *Steckman*, this court held that the records he sought were "exempt from disclosure based upon the work product exception of R.C. 149.43(A)(2)(c)" and that as a person who had exhausted his direct appeals, he could not use R.C. 149.43 "to support a petition for postconviction relief." *Id.*

**{¶ 44}** But Larkins's case did not end with *Steckman*. Another person filed a public-records request for the records Larkins had sought; for unknown reasons, police turned over the records to that person, who forwarded them to Larkins. *State v. Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, ¶ 6. Based on the contents of the records, Larkins filed a motion for a new trial on the grounds that the state had withheld exculpatory evidence. The trial court granted the motion, the court of appeals affirmed, and the case returned to the trial court. *Id.* at ¶ 7. Larkins then moved the trial court to dismiss the indictment, and the court granted the motion. *Id.* at ¶ 8. The trial court wrote:

> "Finally, and perhaps most importantly to this Court, the defendant has been trying at least since 1994 to obtain the exculpatory evidence in possession of the State. * * *
>
> "The issue hence becomes: when the State purposely secrets exculpatory evidence from a defendant resulting in a 'verdict unworthy of confidence' and then actively seeks to conceal that evidence for a period of years, and as a result numerous witnesses are deceased or unable-to-be-located, is dismissal the appropriate remedy? * * *
>
> "It is clear that the passage of time has gravely prejudiced the defendant. Whether this is denominated as a Speedy Trial Violation, a Due Process Violation, a Brady Violation, or a double jeopardy issue, the fact clearly remains that the defendant cannot now in 2004-2005, receive the fair trial to which he is entitled."

*Larkins* at ¶ 11–13, quoting the trial court's decision.

**{¶ 45}** The appellate court affirmed the trial court's dismissal of the indictment. *Id.* at ¶ 52. This court declined to accept the state's appeal on June 7,

2006. *State v. Larkins*, 109 Ohio St.3d 1495, 2006-Ohio-2762, 848 N.E.2d 858. Nearly a dozen years had passed since *Steckman* was decided.

{¶ 46} Larkins gained access to the records that led to the dismissal of his indictment only through an act of bureaucratic grace. Or a bureaucratic mistake. Whichever the case, a clear rule would be better and is necessary.

{¶ 47} Because the PRA should be construed liberally to provide broad access, because the revisions to Crim.R. 16 have leveled the disparity between information available through the PRA and through Crim.R. 16 discovery, and in the interests of justice, we hold that the specific-investigatory-work-product exception of R.C. 149.43(A)(2)(c) does not extend beyond the completion of the trial for which the information was gathered. To the extent that they hold otherwise, *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83, and *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, 673 N.E.2d 1365, are overruled.

*Writ granted*

{¶ 48} Accordingly, we grant the writ. Respondents should have produced to Caster all the records that were withheld based on respondents' claim that the records constituted specific investigatory work product pursuant to R.C. 149.43(A)(2)(c), because Saleh's original trial had long been completed. It should be noted that we order the production of those records that were withheld based on the specific-investigatory-work-product exception; other CLEIR exceptions under R.C. 149.43(A)(2)—as long as the conditions justifying those exceptions still exist—may require the withholding of some records or parts of some records. Thus, DOP need not produce records that would create a high probability of disclosure of "[t]he identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised," pursuant to R.C. 149.43(A)(2)(a); "[i]nformation provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the

source's or witness's identity," pursuant to R.C. 149.43(A)(2)(b); "[s]pecific confidential investigatory techniques or procedures," pursuant to R.C. 149.43(A)(2)(c); or "[i]nformation that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source," pursuant to R.C. 149.43(A)(2)(d). Moreover, as Caster concedes, redactions to remove information regarding matters such as Social Security numbers would be appropriate in the same way that they are appropriate in any public-records case.

*Attorney fees, statutory damages, and court costs*

**{¶ 49}** We now consider Caster's request for attorney fees, statutory damages, and court costs. Former R.C. 149.43(C)(2), 2013 Am.Sub.H.B. No. 59, addresses the awarding of attorney fees in public-records cases and governs our analysis here. Pursuant to former R.C. 149.43(C)(2)(b)(i) the court *shall* award attorney fees when the person responsible for public records "failed to respond affirmatively or negatively to the public records request" within a reasonable amount of time. Here, DOP failed to respond to Caster's November 20, 2013 public-records request. However, Caster made it known in the November request that the September 5, 2013 request by the OIP fellows had been made at Caster's direction. We also note that DOP had responded to the OIP fellows' October 31, 2013 request. This court has held that a reiterated request for the same records does not require an additional response. *State ex rel. Laborers Internatl. Union of N. Am., Local Union No. 500 v. Summerville*, 122 Ohio St. 3d 1234, 2009-Ohio-4090, 913 N.E.2d 452, ¶ 6.

**{¶ 50}** But in this case, Caster's November 20, 2013 request was sufficiently different to constitute a new request. The letter was responsive to DOP's earlier refusals. Caster pointed out deficiencies in the prior DOP responses—DOP had simply issued a blanket denial and had not set forth which of the four categories of confidential law-enforcement investigatory records it

20

specifically applied to deny the requests. And Caster added the information that Saleh's criminal case was complete, that Saleh's direct-appeal process had concluded, and that there were no pending collateral attacks on the conviction, in response to DOP's earlier advisements that the request should be refiled upon completion of the criminal case.

**{¶ 51}** Since DOP failed to respond to the November 20, 2013 public-records request, an award of attorney fees is mandatory. Pursuant to former R.C. 149.43(C)(2)(c), 2013 Am.Sub.H.B. No. 59, the court "may reduce an award of attorney's fees to the relator or not award attorney's fees to the relator" upon application of the factors in former R.C. 149.43(C)(2)(c)(i) and (ii), but we decline to do so.

**{¶ 52}** Because Caster transmitted his request for public records by certified mail, he is entitled to statutory damages pursuant to former R.C. 149.43(C)(1), 2013 Am.Sub.H.B. No. 59. Because of the failure of DOP to provide some records—missing-person-preliminary-investigation forms, the coroner's report, newspaper articles, a press release, and subpoenas—that were clearly public records, the mitigating factors in former R.C. 149.43(C)(1)(a) and (b) are not applicable, so we award Caster statutory damages. In this situation, Caster is entitled to $1,000, the maximum amount of statutory damages stated in former R.C. 149.43(C)(1).

**{¶ 53}** Finally, because this court issues a writ of mandamus ordering respondents to comply with Caster's public-records request, we award Caster court costs pursuant to former R.C. 149.43(C)(2)(a), 2013 Am.Sub.H.B. No. 59. Caster shall provide the court with an itemized application for reasonable attorney fees and costs to be awarded pursuant to R.C. 149.43(C).

## CONCLUSION

**{¶ 54}** We hold that Caster had a clear legal right to the requested records and that respondents had a clear legal duty to provide the records in accordance

with R.C. 149.43(B)(1). We grant Caster's request for attorney fees, statutory damages, and court costs.

Judgment accordingly.

KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., concurs in part and dissents in part, with an opinion joined by LANZINGER, J.

O'DONNELL, J., dissents and would not overrule any portion of *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994).

_____

**O'CONNOR, C.J., concurring in part and dissenting in part.**

{¶ 55} The Columbus Division of Police ("CDP") has an obligation under Ohio law to individually review the records that relator, Donald Caster, requested, including "medical records, police reports, investigation notes, evidence reports, and any other materials compiled by the Columbus Division of Police," to determine which, if any, are subject to disclosure. Accordingly, I would grant the writ and require CDP to make available all *public records* in its files that meet relator's request.

{¶ 56} However, as detailed below, I dissent from the majority opinion to the extent that it orders CDP to produce "all the records that were withheld based on respondents' claim that the records constituted specific investigatory work product." Majority opinion at ¶ 48. I also dissent from the majority's decision to overrule *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), and *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, 673 N.E.2d 1365 (1997), to the extent that those cases hold that the specific-investigatory-work-product exception of R.C. 149.43(A)(2)(c) extends beyond the completion of the trial for which the information was gathered. Instead, I would modify *Steckman*'s definition of the specific-investigatory-work-product exception.

**Breadth of Work-Product Exception**

{¶ 57} I dissent from the majority's order to CDP to produce "all the records that were withheld based on respondents' claim that the records constituted specific investigatory work product." Majority opinion at ¶ 48.

{¶ 58} The Public Records Act, R.C. 149.43, excepts from disclosure confidential law-enforcement investigatory records that would disclose "specific investigatory work product." R.C. 149.43(A)(2)(c). In our early case law interpreting "specific investigatory work product," we narrowly construed the term. In *State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron*, 64 Ohio St.2d 392, 415 N.E.2d 310 (1980), we found that the specific-investigatory-work-product exception did not protect two reports from disclosure. *Id.* at 397-398. The University of Akron's security department had compiled the two reports: one related to the alleged rape of a student and the other recounted the student's death and surrounding circumstances. *Id.* at 392-393. And in *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988), we stated:

> Specific investigatory work product can best be defined as material that demonstrably contains or reveals the theories, mental impressions, and thought processes of the investigator. This definition is consistent with this court's philosophy that "* * * exceptions to disclosure enumerated in R.C. 149.43 are to be construed strictly against the custodian of public records and that all doubt should be resolved in favor of this disclosure."

(Ellipses sic.) *Id.* at 84, quoting *State ex rel. Plain Dealer Publishing Co. v. Lesak*, 9 Ohio St.3d 1, 4, 457 N.E.2d 821 (1984) (Celebrezze, C.J., concurring).

**{¶ 59}** However, we reached a turning point in *Steckman* and repudiated these earlier cases and others that allowed for broad disclosure of law-enforcement investigatory files under the Public Records Act. Specifically, in *Steckman,* the court was concerned that the Public Records Act allowed for broader access to records than the version of Crim.R. 16 in place at the time allowed and that defendants were using the Public Records Act to "obtain information to which they [were] not entitled under Crim.R. 16 *and* * * * to bring about interminable delay in their criminal prosecutions." (Emphasis sic.) *Id.*, 70 Ohio St.3d at 428, 639 N.E.2d 83. Providing broad access to investigatory files under the Public Records Act, we determined, created a "playing field [that] is not level as there is no reciprocal right of prosecutors to obtain additional discovery beyond" Crim. R. 16(C). *Id.* at 428-29. We concluded that if law-enforcement work product "is to be available merely upon demand, then there is a very real probability that certain information will remain unrecorded, witnesses' names will not be catalogued and other memoranda will be absent from the 'official' files." *Id.* at 434. With that concern in mind, we found that the work-product exception, as we explained it, "is broad enough to bring under its umbrella any records compiled by law enforcement officials," *id.*, although we specifically found that the "exception does not include ongoing routine offense and incident reports," *id.* at 435.

**{¶ 60}** Today, to the extent that *Steckman* and its progeny relied on *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), to broadly define the work-product exception such that only "routine offense and incident reports," must be disclosed, *Steckman* at paragraph five of the syllabus, I would modify the definition based on the 2010 revisions to Crim.R. 16 that vastly expanded the discovery of records in criminal cases. The current version of Crim.R. 16 requires, under certain conditions and subject to certain specific exceptions, a prosecuting attorney to provide broad discovery to a defendant, including the following materials:

24

(1) Any written or recorded statement by the defendant or a co-defendant, including police summaries of such statements, and including grand jury testimony by either the defendant or co-defendant;

* * *

(3) * * * [A]ll laboratory or hospital reports, books, papers, documents, photographs, tangible objects, buildings, or places;

(4) * * * [R]esults of physical or mental examinations, experiments or scientific tests;

(5) Any evidence favorable to the defendant and material to guilt or punishment;

(6) All reports from peace officers, the Ohio State Highway Patrol, and federal law enforcement agents, provided however, that a document prepared by a person other than the witness testifying will not be considered to be the witness's prior statement for purposes of the cross examination of that particular witness under the Rules of Evidence unless explicitly adopted by the witness;

(7) Any written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal.

Crim.R. 16(B).

{¶ 61} With the move toward open-file discovery, Crim.R. 16 now obligates prosecuting attorneys to turn over much of the investigatory files to

defendants. Accordingly, our concern in *Steckman* that a public-records request would incentivize shoddy investigatory techniques is no longer overriding.

**{¶ 62}** But, in advocating that the fifth paragraph of the *Steckman* syllabus should be modified, I cannot agree with the majority that all of the specific investigatory work product in the investigatory file should be available unless it is subject to one of the other narrow exceptions to disclosure of confidential law-enforcement investigatory records. Even Crim.R. 16 does not allow for access to all of a law-enforcement department's case files. Importantly, "[t]he prosecuting attorney may designate any material subject to disclosure under this rule as 'counsel only' by stamping a prominent notice on each page or thing so designated." Crim.R. 16(C). The prosecuting attorney is also permitted to withhold documents when there are "reasonable, articulable grounds to believe that disclosure will * * * subject [a witness, victim, or third party] to intimidation or coercion * * * [or] to a substantial risk of serious economic harm," Crim.R. 16(D)(1) and (2), or if "[d]isclosure will compromise * * * a confidential law enforcement technique," Crim.R. 16(D)(3). And "materials subject to the work product protection" are not subject to disclosure at all, including "reports, memoranda, or other internal documents made by the prosecuting attorney" and his or her agents." Crim.R. 16(J)(1). The majority opens the door for disclosure well beyond what even Crim.R. 16 requires, and it does so without any of the safeguards that the rule and R.C. 149.43(A)(2) put in place.

**{¶ 63}** Recognizing that the concern we described in *Steckman* no longer exists given the modifications to Crim.R. 16 but that there must be some standard to identify "specific investigatory work product," I would limit the term as we did in *Beacon Journal Publishing Co.* and *Natl. Broadcasting Co.*, subjecting facts to disclosure as public records while protecting the theories, mental impressions, and thought processes of the investigator as specific investigatory work product. Put another way, I would analogize the specific investigatory work product of law

26

enforcement to the opinion work product in our attorney-work-product jurisprudence. Opinion work product includes "mental impressions, theories, and legal conclusions." *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 60.

{¶ 64} In further explanation, again borrowing from the parlance of attorney-work-product jurisprudence, "specific investigatory work product" does not include the law-enforcement equivalent of fact work product. Citing *Hickman*, 329 U.S. at 510-511, 67 S.Ct. 385, 91 L.Ed.2d 451, the United States Court of Appeals for the Sixth Circuit has referred to fact work product as "written or oral information transmitted to the attorney and recorded as conveyed by the client." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir.1986). Appellate courts in Ohio have described witness statements and underlying facts as fact work product. *Jerome v. A-Best Products Co.*, 8th Dist. Cuyahoga Nos. 79139, 79140, 79141, and 79142, 2002-Ohio-1824, ¶ 21. *See also Jackson v. Gregor*, 160 Ohio App.3d 258, 2005-Ohio-1588, 826 N.E.2d 900, ¶ 34 (2d Dist.); *Fowler v. Coleman*, 10th Dist. Franklin No. 04AP-248, 2005-Ohio-1518, ¶ 28.

{¶ 65} This distinction would give effect to the "specific investigatory" modifier in R.C. 149.43(A)(2)(c), the influence of which we largely abolished in *Steckman*. The specific-investigatory-work-product exception should entitle law-enforcement officers to protect their theories, impressions, and strategies, as may be set forth, for instance, in interview notes, memos to the file, or to-do lists. But members of the public should be able to request access to facts uncovered during the investigation, for instance witness statements, but with identifying information about the witness redacted to the extent the information suggests law-enforcement strategy or falls within another confidential-law-enforcement-investigatory-record exception. A law-enforcement department must examine a file and individually determine which materials are routine or factual and which disclose confidential law-enforcement investigatory records, including specific investigatory work

product, based on the Public Records Act. The decision is subject to in camera review when challenged.

## Duration of Exception

{¶ 66} I also dissent from the majority's decision to overrule *Steckman* and *WLWT-TV5* to the extent that those cases held that the specific-investigatory-work-product exception of R.C. 149.43(A)(2)(c) extends beyond the completion of the trial for which the information is gathered. While I agree that protecting trial-preparation records that are part of a law-enforcement file is unnecessary following exhaustion of the defendant's direct appeals or the decision not to prosecute, that is not true for the information that R.C. 149.43(A)(2) protects. Releasing materials that demonstrate law-enforcement investigatory strategies, particularly if knowledge of such strategies would empower criminals to avoid detection, is dangerous. The majority's decision today will lead to an array of negative consequences.

## The Trial-Preparation-Records Exception

{¶ 67} While I believe that R.C. 149.43(A)(2) permanently excepts certain law-enforcement investigatory records from the Public Records Act, I would hold that R.C. 149.43(A)(4), the trial-preparation exception, also protects the bulk of a law-enforcement file from disclosure *until* a defendant has exhausted all direct appeals in the case or until the law-enforcement department closes the case following a decision not to press charges. The trial-preparation exception would include, among other materials, witness statements, interview notes, lab results, and internal memoranda that a law-enforcement officer creates during an investigation in an effort to gather evidence to bring charges against an accused. That evidence is gathered in reasonable anticipation of a criminal action or proceeding, and as described in *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, at paragraph four of the syllabus, loses its trial-preparation-record protection and may be subject to disclosure only after the law-enforcement department closes the case without

charges or the litigation is completed, including the exhaustion of all direct appeals. While materials in the file lose their protection as trial-preparation records at that time, the confidential-law-enforcement-investigatory-record exception may still protect parts of the file, as described previously.

{¶ 68} The trial-preparation exception does not cover those records generated on a routine basis, such as offense and incident reports or certain dashboard-camera footage, as we described in *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, ___ Ohio St.3d ___, 2016-Ohio-7987, ___ N.E.3d ___, ¶ 45. Law-enforcement officers create those materials as a matter of course, without regard to whether the officers yet have any idea if the matter will lead to an indictment or trial. Accordingly, these items cannot be said to be "specifically compiled in reasonable anticipation of * * * a civil or criminal action or proceeding" as required by the trial-preparation-record exception. R.C. 149.43(A)(4).

{¶ 69} This arrangement is sensible. The trial-preparation-record exception protects "any record that contains information that is specifically compiled in reasonable anticipation of * * * [a] criminal action or proceeding." *Id*. The primary purpose behind a criminal investigation by law enforcement is to gather information that could lead to an indictment and trial. While this court in *Steckman* stated that a trial-preparation record "does not lose its exempt status unless and until all 'trials,' 'actions' and/or 'proceedings' have been fully completed," *id.* at paragraph four of the syllabus, this cannot be a license to withhold such records until a defendant is released from prison or dead. Construing the Public Records Act liberally in favor of public access, as we must, it is antithetical to permit an interpretation of *Steckman* that allows withholding of substantially all of an investigatory file indefinitely. Accordingly, I would protect the file either until law enforcement closes a case or until there is no longer a reasonable probability that a verdict will be reconsidered—after the defendant has exhausted his or her direct-appeal options.

I would not disturb *Steckman* to the extent that it applies to the files of prosecutors or others attorneys working on criminal or civil actions.

**{¶ 70}** I recognize that the trial-preparation-record exception protects some of the same law-enforcement materials that defendants are entitled to under Crim.R. 16. However, disclosure to a defendant is not the same as disclosure to the public, and public policy supports withholding nonroutine law-enforcement records until the likelihood of trial and retrial, after a successful direct appeal, pass. Restricting public access to these documents prevents the press from trying an active case in the news. In the event a defendant is innocent, it prevents the actual perpetrator from accessing information that he or she could use to prevent detection. It also prevents a defendant from accessing records that may have been disclosed in discovery pursuant to a counsel-only designation.

**{¶ 71}** The majority would allow disclosure of specific investigatory work product after trial but before a defendant's direct appeals are exhausted. This would re-create the problem that *Steckman* sought to address: giving the public (and potentially the defendant) access to information in the investigatory file that was not available to the defendant during trial and opening a second level of potential discovery through a public-records request between a trial verdict and a defendant's direct appeal. *See Steckman*, 70 Ohio St.3d at 428-429, 639 N.E.2d 83.

### Overcoming Stare Decisis

**{¶ 72}** Stare decisis does not prevent us from modifying the broad work-product exception set forth in *Steckman*. Even to the extent that this modification may overrule a part of that decision, it meets the well-settled test for overruling prior precedent. That test requires us to determine if (1) a change in circumstances no longer justifies continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would create an undue hardship for those who have relied upon it. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 48. I have already explained that

the 2010 revisions to Crim.R. 16 have changed the circumstances of this situation and that adhering to the broad work-product definition stated in *Steckman* is no longer justified.

{¶ 73} The work-product definition in *Steckman* also defies practical workability. We have held that the Public Records Act is to be liberally construed in favor of broad access while resolving doubts in favor of disclosure. *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13. Yet under *Steckman*, the timely release of any part of a law-enforcement investigatory file will not occur, outside of "routine offense and incident reports." *Id*. at 435. If this was the General Assembly's intent, there was no need for it to provide the level of detail stated in R.C. 149.43(A)(2). The General Assembly could simply have excepted all law-enforcement investigatory files from the Public Records Act. By so closely circumscribing the law, *Steckman* renders the Public Records Act virtually worthless in regard to many law-enforcement files.

{¶ 74} Finally, abandoning the work-product definition set forth in *Steckman* does not create a hardship on the law-enforcement departments that have relied on it. A law-enforcement department may withhold or redact materials to the extent they contain information legitimately excepted by R.C. 149.43(A)(2), including law-enforcement strategy and witness and uncharged-suspect identities. Moreover, given that prosecutors already disclose this information and more under Crim.R. 16, law-enforcement officers have not relied on an expectation of nondisclosure at all during the past six years.

### Attorney Fees

{¶ 75} Finally, for the reasons described above, I agree with the majority opinion that a well-informed person could not reasonably believe that he or she complied with the Public Records Act by refusing to disclose any of the records requested by relator. *See* R.C. 149.43(C)(2)(c). Accordingly, I concur in the award of attorney fees, statutory damages, and costs to relator.

LANZINGER, J., concurs in the foregoing opinion.

_____

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, for relator.

Richard C. Pfeiffer Jr., Columbus City Attorney, and Paula J. Lloyd, Assistant City Attorney, for respondents.

Baker & Hostetler, L.L.P., David L. Marburger, and Melissa A. DeGaetano, urging granting of the writ for amicus curiae Ohio Coalition for Open Government.

Soumyajit Dutta; and Covington & Burling, L.L.P., Ashley E. Bass, and David J. Shaw, urging granting of the writ for amicus curiae the Innocence Network.

_____