PER CURIAM:
I. INTRODUCTION
{¶ 1} On May 26, 2016, Georgianna I. Parisi filed a Verified Petition for Writ of Mandamus against the Dayton Bar Association and the Dayton Bar Association *182 Certified Grievance Committee (the "DBA" and "DBACGC," respectively). Parisi, an attorney, asks this court to compel the respondents to produce public records related to grievances against her. The DBA and DBACGC moved to dismiss the petition, arguing that the records sought are related to the attorney disciplinary process and are not subject to release. Parisi filed a response; the DBA and DBACGC filed a reply.
{¶ 2} On February 15, 2017, this court notified the parties that it intended to convert the motion to dismiss to a motion for summary judgment, and gave the parties an opportunity to submit additional evidentiary materials and argument. Civ.R. 12(B) ; Loc. App.R. 8(A). The DBA and DBACGC filed a notice that they would stand on the materials already filed. Parisi filed a response to the notice, and separately asked for a continuance to conduct discovery pursuant to Civ.R. 56(F), a request this court overruled on April 3, 2017. We then gave Parisi additional time to file an additional response to the converted motion for summary judgment.
{¶ 3} In response, Parisi filed her own motion for summary judgment, to which the DBA and DBACGC responded. Respondents also moved to strike the exhibits to Parisi's motion, arguing that they were not submitted in accordance with Civ.R. 56 or were otherwise improper. Parisi filed a reply to both filings.
{¶ 4} This matter is therefore before the court on: 1) the DBA and DBACGC's converted motion for summary judgment; 2) Parisi's motion for summary judgment; and 3) the DBA and DBACGC's motion to strike exhibits to Parisi's motion for summary judgment. Parisi's previously-filed motion for leave to file a memorandum of additional authorities is also pending. For the reasons that follow, we conclude that the DBA and DBACGC are entitled to judgment as a matter of law. We deny the request for a writ of mandamus and dismiss this action.
II. LEGAL STANDARDS
A. Standard for a Writ of Mandamus
{¶ 5} "A writ of mandamus is an extraordinary remedy that only applies in a limited set of circumstances." State ex rel. Parisi v. Heck , 2d Dist. Montgomery No. 25709, 2013-Ohio-4948, ¶ 4, 2013 WL 5975008. It is also an appropriate way to seek compliance with Ohio's Public Records Act. R.C. 149.43(C)(1)(b) ; State ex rel. Beacon Journal Publishing Co. v. Akron , 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 23.
{¶ 6} To be entitled to a writ of mandamus, Relator must establish that she has a clear legal right to the public records she's requested, and that Respondents have a clear legal duty to provide those records. State ex rel. McQueen v. Weibling-Holliday , 150 Ohio St.3d 17, 2016-Ohio-5107, 78 N.E.3d 825, ¶ 6. Unlike other relators filing in mandamus, "persons requesting records under R.C. 149.43(C) need not establish the lack of an alternative, adequate legal remedy in order to be entitled to the writ." State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency , 88 Ohio St.3d 166, 171, 724 N.E.2d 411 (2000) ; State ex rel. Caster v. Columbus , Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-8394, ¶ 15, 2016 WL 7448756. "Mandamus will not issue to compel an act that has already been performed." State ex rel. Madsen v. Jones , 106 Ohio St.3d 178, 2005-Ohio-4381, 833 N.E.2d 291, ¶ 11.
B. Standard for Summary Judgment under Civ.R. 56
{¶ 7} Mandamus actions "ordinarily proceed as civil actions under the Ohio Rules *183 of Civil Procedure." Loc. App.R. 8(A). To be entitled to summary judgment under Civ.R. 56, a party must show that: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. , 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).
C. Standards for Public Records Act Requests
{¶ 8} Ohio's Public Records Act ("PRA") is codified in R.C. 149.43. The PRA requires a "public office" to provide "public records" maintained by that office upon request, subject to certain exceptions and exemptions. A "public office," for purposes of the PRA, "includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A) ; State ex rel. Toledo Blade Co. v. Univ. of Toledo Found. , 65 Ohio St.3d 258, 259-260, 602 N.E.2d 1159 (1992) (using definition in R.C. 149.011(A) to determine if R.C. 149.43 applied). Of note, a "state agency" "includes every department, bureau, board, commission, office, or other organized body established by the constitution and laws of this state for the exercise of any function of state government, including any state-supported institution of higher education, the general assembly, any legislative agency, any court or judicial agency , or any political subdivision or agency of a political subdivision." (Emphasis added.) R.C. 149.011(B). But see Thomas J. Moyer, Chief Justice Offers Historical Perspective on Public Records, Open Government , Supreme Court & Judicial System News (Feb. 12, 2008), available at https://www.supremecourt.ohio.gov/PIO/news/2008/pubrecords_021208.asp (accessed Nov. 7, 2017) ("While the courts in Ohio have always acted in accordance with the Public Records Act, the act does not govern the courts").
{¶ 9} A "Record" includes "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).
{¶ 10} Under the PRA, a public record means "records kept by any public office." R.C. 149.43(A)(1). However, not all records kept by a public office are public records. The definition of public records excludes, among other things, "records the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). Of relevance here, the Supreme Court Rules for the Government of the Bar (the "Disciplinary Rules") have been treated by courts as state law that may prohibit the release of records. See, e.g., State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office , 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 30 (records relating to a filed grievance were exempt from disclosure in a public records request by a previous version of the Disciplinary Rules); State ex rel. Parisi v. Heck , 2d Dist. Montgomery No. 25709, 2013-Ohio-4948, ¶ 11, 2013 WL 5975008 (same).
{¶ 11} The PRA "mandates access to public records upon request unless the requested records are specifically excepted from disclosure."
*184 State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency , 88 Ohio St.3d 166, 170, 724 N.E.2d 411 (2000), citing State ex rel. Miami Student v. Miami Univ. , 79 Ohio St.3d 168, 170, 680 N.E.2d 956 (1997). "Release may be prohibited by an exception or by another statute providing protection to the subject of the information sought." Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group , 145 Ohio St.3d 446, 2016-Ohio-556, 50 N.E.3d 499, ¶ 6.
{¶ 12} The records "custodian has the burden to establish the applicability of an exception" to release or access. State ex rel. Beacon Journal Publishing Co. v. Akron , 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 23 ; State ex rel. Carr v. Akron , 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30. The PRA is "to be construed liberally as favoring broad access, and any questions should be determined in favor of disclosure of public records." State ex rel. Dayton Newspapers v. Dayton Bd. Of Edn. , 140 Ohio App.3d 243, 246, 747 N.E.2d 255 (2d Dist.2000).
{¶ 13} Even with such a construction, a " 'relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence.' " State ex rel. Caster v. Columbus , Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-8394, ¶ 15, 2016 WL 7448756, quoting McCaffrey at ¶ 16. "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " State v. Corp. for Findlay Mkt. , 135 Ohio St.3d 416, 2013-Ohio-1532, 988 N.E.2d 546, ¶ 15, quoting Cross v. Ledford , 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.
D. Standards for Confidentiality in the Ohio Attorney Disciplinary Process
{¶ 14} The public records requests at issue here seek records from a bar association and its certified grievance committee related to grievances against an attorney. In this unusual situation, Parisi is both the requestor and the subject of the requests. The DBA and DBACGC are the putative public offices. The DBACGC also conducted the investigations into grievances made against Parisi. The parties refer to the DBA and DBACGC together in this action,[1] although the initial request was directed to the DBA. In responding, the DBA/DBACGC stated that it understood Parisi's request to "seek[ ] records maintained by the Dayton Bar Association's Certified Grievance Committee," a statement Parisi did not challenge. Because the parties have not distinguished between the DBA and the DBACGC for purposes of their summary judgment motions, we will do the same and refer to both Respondents hereafter collectively as the DBACGC.
{¶ 15} As discussed above, courts have applied the Supreme Court Rules for the Government of the Bar (the "Disciplinary Rules") as prohibiting disclosure of records that may otherwise have been public records under the PRA. See, e.g. , *185 State ex rel. Parisi v. Heck , 2d Dist. Montgomery No. 25709, 2013-Ohio-4948, ¶ 11, 2013 WL 5975008 ; R.C. 149.43(A)(1)(v) (excepting "records the release of which is prohibited by state or federal law"). The Disciplinary Rules contain standards for confidentiality of documents and proceedings during the attorney disciplinary process. Gov. Bar R. V, or "Rule V," of the Disciplinary Rules in particular sets out the "Disciplinary Procedure" for grievances filed against attorneys.
{¶ 16} The current version of the relevant part of Rule V went into effect on January 1, 2015. Gov. Bar R. XX, Section 2(UUUU).[2] The parties all refer in their pleadings to this version of Rule V, rather than the version or versions that were in effect while the grievances discussed herein were pending. We do the same here, without deciding which version applies as a matter of law. See Rule V, Section 27(C) ("This rule * * * shall apply to all pending investigations and complaints so far as may be practicable and to all future investigations, complaints, and petitions * * * "). The current disciplinary procedure is described generally and to the extent relevant to this case in the following paragraphs.
{¶ 17} The Disciplinary Rules provide that "a certified grievance committee shall review and may investigate a grievance that alleges facts that, if substantiated, would constitute misconduct by a judicial officer or attorney * * *." Rule V, Section 9(C)(1).[3] A certified grievance committee ("CGC") "shall review and may investigate any matter filed with it or that comes to its attention and may file a complaint pursuant to this rule in cases where it finds probable cause to believe that misconduct has occurred * * *." Id. A CGC may retain outside experts such as an independent investigator or other experts in the course of its investigation. Rule V, Section 9(E).
{¶ 18} A grievance filed with a CGC "may be dismissed without investigation if the grievance and any supporting material do not contain an allegation of misconduct" by the attorney. Rule V, Section 9(C)(2). "If, upon review or investigation of a grievance, a certified grievance committee * * * determines that the filing of a complaint with the Board is not warranted, the grievant and the judicial officer or attorney shall be notified in writing of that determination * * *." Rule V, Section 10(C). In this situation, a copy of the grievance is available upon request of the attorney involved. Rule V, Section 10(C). "Files related to any matter that the committee dismissed without investigation shall be retained for two years," while those "related to any matter in which the committee initiated an investigation shall be retained for ten years." Rule V, Section 5(D)(1)(f)(ii) and (iii).
{¶ 19} Conversely, a CGC may file a complaint with the Board of Professional Conduct (the "Board") upon a majority vote of the CGC, after giving the attorney an opportunity to respond. Rule V, Section 10(A) and (B). While the "complaint shall not include any documents, exhibits, or other attachments unless specifically required *186 by Civ. R. 10," ( Rule V, Section 10(E)(2)), certain other materials must be submitted to the Board with the complaint:
The relator shall submit with the complaint sufficient investigatory materials to demonstrate probable cause. The materials shall include any response submitted by or on behalf of the respondent to the notice of intent to file provided by the relator pursuant to Section 10(A) and an affidavit from bar counsel or other appropriate representative of the relator documenting relator's contacts with or attempts to contact the respondent prior to filing the complaint. The materials may include investigation reports, summaries, depositions, statements, and any other relevant material.
Rule V, Section 10(F).
{¶ 20} At this point in this process, the materials are generally confidential: "[p]rior to a determination of probable cause by the Board, all proceedings, documents, and deliberations relating to review, investigation, and consideration of grievances shall be confidential" unless one of three exceptions apply. Rule V, Section 8(A)(1). Likewise, and subject to the same exceptions, "all investigatory materials prepared in connection with an investigation conducted pursuant to Section 9 of this rule or submitted with a complaint filed pursuant to Section 10 of this rule shall be confidential prior to certification of a formal complaint pursuant to Section 11 of this rule." Rule V, Section 8(A)(3).
{¶ 21} One exception is "[w]here the respondent expressly and voluntarily waives confidentiality of the proceedings." Rule V, Section 8(A)(1)(a). However, the same provision somewhat confusingly notes that "[a] waiver of confidentiality does not entitle the respondent or any other person access to documents or deliberations expressly designated as confidential under this section." Id.
{¶ 22} A probable cause panel of the Board reviews the complaint and investigatory materials submitted by a CGC and "make[s] an independent determination of whether probable cause exists for the filing of a complaint." Rule V, Section 11(A). "The panel shall issue an order certifying the complaint, in whole or in part, to the Board or dismissing the complaint and investigation in its entirety." Id.
{¶ 23} If the complaint is dismissed without a finding of probable cause and is not certified to the Board by a probable cause panel, the documents, proceedings, and investigatory materials prepared or submitted remain confidential. Rule V, Section 8(A)(3). It is unclear whether the aforementioned exceptions, including the waiver-of-confidentiality exception, also apply to this provision.
{¶ 24} If a complaint is not dismissed but is instead certified to the Board, different confidentiality provisions apply. As relevant here, the Disciplinary Rules provide that:
From the time a complaint has been certified to the Board by a probable cause panel, the complaint and all subsequent proceedings conducted and documents filed in connection with the complaint shall be public except as follows:
* * *
(3) The summary of investigation prepared by the relator shall be confidential as workproduct of the relator. All other investigatory materials and any attachments prepared in connection with an investigation conducted pursuant to Section 9 of this rule or submitted with a complaint filed pursuant to Section 10 of this rule shall be discoverable as provided in the Ohio Rules of Civil Procedure.
Rule V, Section 8(B)(3). Proceedings then continue on the certified complaint before the Board and the Supreme Court of Ohio *187 as appropriate. Rule V, Sections 12 through 17.
{¶ 25} With these standards in mind, we turn to the matters pending before the court.
III. ANALYSIS
A. Preliminary Motions
1. Motion for Leave to File Memorandum of Additional Authorities
{¶ 26} On January 30, 2017, Parisi filed a Motion for Leave to File a Memorandum of Additional Authorities. Therein, she cites to the recent Ohio Supreme Court case of State ex rel. Caster v. Columbus , Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-8394, 2016 WL 7448756, and the Sixth Circuit's affirmance of the dismissal of her separate civil rights action against the DBA and others. Parisi v. Heck , 666 Fed.Appx. 384 (6th Cir.2016). The motion is SUSTAINED.
2. Motion to Strike Exhibits to Parisi's Motion for Summary Judgment
{¶ 27} On May 10, 2017, the DBACGC moved to strike the exhibits to Parisi's Motion for Summary Judgment , filed April 13, 2017. The exhibits include: A) an Affidavit of Dianna M. Anelli, Parisi's former counsel; B) a printout of a deposition of Joseph Moore (an investigator) that is not signed/certified; and C) two pages that purport to be an excerpt of a letter written by Jonathon L. Beck recommending that the DBACGC "refer this matter to the Probable Cause Panel of the Board of Commissioners for Grievances & Discipline."[4] The motion is SUSTAINED in part and OVERRULED in part.
{¶ 28} The DBACGC moves to strike the Anelli Affidavit on the basis that it offers expert legal opinion on the legal questions currently before the court. Among other things, Anelli opines that "the Dayton Bar Assn. is a public entity" for purposes of the PRA; that the "Supreme Court of Ohio has held that work product ends when litigations ends"; and that "it is my opinion to a reasonable degree of legal certainty that the documentation that Ms. Parisi seeks is no longer protected as work product under Gov. Bar R. V(8)(B)(3)." Anelli Affidavit at ¶¶ 16, 17, 21. Parisi agrees that Anelli "offered her professional opinion" on these issues, but asserts that "her opinion is meant to provide guidance" to this court.
{¶ 29} We strike the Anelli Affidavit. "The purpose of expert testimony is to aid and assist the trier of fact in understanding the evidence presented and in arriving at a correct determination of the litigated issues." Waste Mgt. of Ohio v. Cincinnati Bd. of Health of Cincinnati , 159 Ohio App.3d 806, 2005-Ohio-1153, 825 N.E.2d 660, ¶ 55 (10th Dist.), citing McKay Machine Co. v. Rodman , 11 Ohio St.2d 77, 81-82, 228 N.E.2d 304 (1967). "However 'an expert's interpretation of the law should not be permitted, as that is within the sole province of the court.' " Id. , quoting Wagenheim v. Alexander Grant & Co. , 19 Ohio App.3d 7, 19, 482 N.E.2d 955 (10th Dist.1983). See also Am. Energy Corp. v. Datkuliak , 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 92 (7th Dist.) ("Expert testimony is not admissible to assist the court in making its decision for issues that solely require a determination of a question of law and that raise no factual issue"). The Anelli Affidavit offers *188 a legal opinion on the questions of law currently before the court. We therefore find the affidavit improper and strike it as an exhibit to Parisi's Motion for Summary Judgment.
{¶ 30} The DBACGC argues that we should also strike the remaining exhibits to Parisi's motion because they are not sworn, certified, or authenticated by an affidavit. See Civ.R. 56(C) ("No evidence or stipulation may be considered except as stated in this rule"). Exhibit B purports to be a transcript of a deposition of Joseph Moore, taken in In re: Georgianna I. Parisi (Respondent) v. Dayton Bar Association (Relator) , Case No. 09-064 before the Board of Commissioners on Grievances and Discipline. The certification appended to the transcript is not signed. Exhibit C purports to be a two-page excerpt of letter written by Jonathon L. Beck, apparently an investigator for the DBACGC.
{¶ 31} Exhibits B and C were not attached to an affidavit describing them and averring that they are true and accurate copies. However, a full copy of the Moore Deposition and the Beck Letter were attached to Parisi's May 24, 2017 Relator's Reply Memorandum , along with Parisi's affidavit attempting to authenticate the documents. While the procedure is not quite perfect under Civ.R. 56, we may relax the requirements pursuant to Loc. App.R. 8(A) where justice is better served. We decline to strike Exhibits B and C.
{¶ 32} Accordingly, we SUSTAIN in part and OVERRULE in part the DBACGC's Motion to Strike Exhibits to Parisi's Motion for Summary Judgment. The Anelli Affidavit (Exhibit A) is STRICKEN and will not be considered; the Moore Deposition and the Beck Letter (Exhibits B and C) remain in the record.
B. Mandamus Claim
1. Public Office
{¶ 33} This mandamus action is brought under the authority of the Ohio Public Records Act ("PRA"). R.C. 149.43(C)(1)(b). Parisi asserts in her Petition that the PRA applies to the DBACGC because it is a public office. Specifically, she asserts that the DBACGC acts as, or has been found to be, an "arm" of the Supreme Court of Ohio with respect to disciplinary proceedings. See Parisi v. Heck , 666 Fed.Appx. 384, 386 (6th Cir.2016) (Batchelder, Circuit Judge, concurring) (agreeing that a bar association and its committees are immune from suit). Because the Supreme Court is a public office, Parisi reasons, its "arms" are also public offices when they perform disciplinary functions on behalf of the Supreme Court.
{¶ 34} Public access to most Supreme Court records, however, is controlled by the Public Access Rules set forth in Rules 44 through 47 of the Rules of Superintendence for the Courts of Ohio ("Superintendence Rules"), rather than by the Public Records Act. Sup.R. 44 ; See also Public Access Rules Frequently Asked Questions , p. 1-2, available at https://www.supremecourt.ohio.gov/Boards/superintendence/PAR/FAQ.pdf (accessed Nov. 13, 2017) (staff notes on the applicability of the Public Access Rules vs. the Public Records Law). According to Chief Justice Maureen O'Connor, "[b]y adoption of the [Public Access Rules] in 2009, the supreme court effectively announced to the other branches of government that it would direct Ohio courts-through its superintending authority-on how court records would be made accessible." O'Connor, The Ohio Modern Courts Amendment: 45 Years of Progress , 76 Alb. L. Rev. 1963, 1971 (2013). A few years later, "the supreme court announced via [
*189 State ex rel. Vindicator Printing Co. v. Wolff , 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89 ] that it fully intended to preempt the state law concerning public records in favor of its own rule." Id. at 1972.
{¶ 35} The Supreme Court has denied records requests that used the wrong vehicle. See, e.g., State ex rel. Richfield v. Laria , 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040. There, the Court noted that " Sup.R. 44 through 47 deal specifically with the procedures regulating public access to court records and are the sole vehicle for obtaining such records in actions commenced after July 1, 2009." Id. at ¶ 8. The Court also routinely cites the Public Access Rules as protecting records in disciplinary cases. See, e.g., Cleveland Metro. Bar Assn. Certified Grievance Commt. v. Sliwinski , 142 Ohio St.3d 1224, 2015-Ohio-1276, 29 N.E.3d 987, ¶ 19 ("All case documents are subject to Sup.R. 44 through 47, which govern access to court records"); Disciplinary Counsel v. Williams , 147 Ohio St.3d 1242, 2016-Ohio-5717, 65 N.E.3d 761, ¶ 20 (same). Moreover, the Disciplinary Rules themselves permit records requests of administrative and financial records to be pursued under Sup.R. 45. Rule V, Section 8(F).
{¶ 36} Although this would seem to be a threshold issue and one on which briefing would be expected, neither party has specifically briefed it. We need not determine today whether the Public Records Act or the Public Access Rules apply to this case.[5] Neither party has moved for summary judgment specifically on this basis. Parisi simply asks for relief in her motion, assuming that the PRA applies and focusing on whether the requested records are public records or exempt from disclosure. The DBACGC does not concede that it is a public office, but does not move for summary judgment on this basis. It instead asserts that if it is a public office subject to the requirements of the PRA, the requested records are barred from release. We therefore make no determination today on these issues. We conclude that if the PRA applies, and if the DBACGC is a public office as defined thereunder, the records at issue cannot be released via a public records request made under R.C. 149.43.
2. Public Records
{¶ 37} Subject to certain exceptions, the PRA provides that upon request, "all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable *190 times during regular business hours." R.C. 149.43(B)(1). A "public office or person responsible for public records shall make copies of the requested public record available at cost and within a reasonable period of time." Id.
a. Requested Records
{¶ 38} Before determining whether the DBACGC has a clear legal duty to provide records to Parisi under the PRA, we must determine whether the requested records are public records. Before making that determination, we have to decipher what exactly Parisi requested and received, and which records remain in dispute between the parties. We have not been aided much by the record before us in this respect: Parisi nebulously asked for "all records which the DBA has concerning me" and invites us to "speculate as to what information might be contained in the said documents," while the DBACGC declines to provide specific information about what was withheld (with the exception of the "investigator's summaries of investigation"), replying cryptically to Parisi that "we believe your request for records falls within the exclusive jurisdiction of the Board of Professional Conduct of the Ohio Supreme Court" as the reason for not producing further records.
{¶ 39} The parties appear to agree that Parisi made the first public records request pertinent to this case on February 16, 2016 by letter. She requested "any and all records which the Dayton Bar Association, and any employees and/or volunteers operating under it, have concerning me." Parisi limited her request to "public records related to me from 2013 and before," which were "generated during Parisi I and Parisi II, and any time prior to that time period." From the allegations in the Verified Petition , we understand "Parisi I " to refer to an August 2009 complaint filed by the Dayton Bar Association's Certified Grievance Committee against Parisi, concerning Parisi's clients R.J.G. and S.D. Verified Petition at ¶ 16; Dayton Bar Assn. v. Parisi , 131 Ohio St.3d 345, 2012-Ohio-879, 965 N.E.2d 268, ¶ 18. We understand "Parisi II " to refer to an August 2012 complaint between the same parties concerning clients K.L. and T.J.[6] Petition at ¶ 17. According to an email between the parties included in the filings herein, "[b]oth Parisi I and Parisi II were certified as formal complaints." Parisi I was resolved on March 8, 2012. Dayton Bar Assn. v. Parisi , 131 Ohio St.3d 345, 2012-Ohio-879, 965 N.E.2d 268 (imposing six-month suspension, stayed). The resolution date of the second formal grievance in Parisi II is not clear, but it appears to have been resolved in September 2013,[7] prior to a formal hearing with the Board. See Parisi v. Heck , S.D.Ohio No. 3:14-CV-346, 2015 WL 3999300, *4, report and recommendation adopted , S.D.Ohio No. 3:14-CV-346, 2016 WL 98600, aff'd , 666 Fed.Appx. 384 (6th Cir.2016) (civil rights action against various defendants, including the Dayton Bar Association, filed in 2014 after Parisi II was settled).
*191 {¶ 40} After some preliminary correspondence between the parties, on April 8, 2016, the DBACGC[8] responded by letter. The April 8 Letter states that "[a]ny documents maintained by the Certified Grievance Committee of the Dayton Bar Association were related to grievances filed against" Parisi. However, citing Rule V, Section 8(A)(1) and (A)(3) of the Disciplinary Rules, the DBACGC asserted that the Rule "exempts disclosure of all proceedings, documents and deliberations relating to review, investigation, and consideration of grievances before a probable cause determination where a complaint is not filed or a filed complaint dismissed for lack of probable cause." The letter does not state whether or how the records requested from Parisi I and Parisi II , or other grievances filed during the specified time, fit into the cited rules.
{¶ 41} After additional email correspondence, the DBACGC sent an email to Parisi on April 8, 2016 to confirm a telephone discussion about the scope of Parisi's request. The April 8 Email states:
Per my discussion with you today, it is my understanding that you are not seeking any records related to the grievances of [R.J.G., S.D., T.J. and K.L.], those grievances that were the subject of Parisi I and Parisi II , with the following exception. You would like a copy of the investigator's report. You would also like those documents (if any) including any personal notes specifically relating to the votes of the grievance committee and its deliberations. If no such documents exist, you are agreeable to being told that.
* * *
Additionally, you would like copies of any documents related to grievances made against you which did not proceed to a formal complaint, or in which a formal complaint was dismissed for lack of probable cause. You would also like any documents the Dayton Bar Association has that relate to the grievance filed against you by Judge [S.W.] (other than those documents you already have and which you filed in the district court case).
{¶ 42} On April 11, 2016, Parisi confirmed that the DBACGC's April 8 Email "did indeed correctly convey our conversation." However, she then "expanded" her initial request to include "all records which the DBA has concerning me, including records associated with Parisi I and Parisi II." She likewise amended her request to include "any and all emails, text messages, and any and all electronic messages, whether made on the DBA's or an individual's electronic equipment." Parisi further requested copies of "previously disclosed" documents, although the scope of this request is not entirely clear.
{¶ 43} Finally, Parisi asked
that I be provided with the number of times votes were taken regarding grievances involving me, and the number of votes yea or nay for each of those votes. Pursuant to Gov. Bar R. V(9)(B), I am *192 also asking what the quorum was for each of those votes, and whether the quorum number changes.
In the same April 11, 2016 email, Parisi also "expressly waived confidentiality" with respect to the records. Id.
{¶ 44} On April 15, 2016, the DBACGC provided the following information to Parisi:
Based upon your waiver, the Dayton Bar Association has knowledge of four grievances made against you that did not proceed to probable cause:
(1) a grievance filed by [H.B.] in December, 1999,
(2) a grievance filed by M/M [S.R.J.] in September, 1992,
(3) a grievance filed by [N.A.] in October, 2011, and
(4) a grievance filed by Judge [S.W.] in 2015.
The DBACGC advised that, due to a 10-year retention policy, it had no additional records concerning the 1999 H.B. and 1992 S.R.J. grievances, Nos. 1 and 2, above.
{¶ 45} As to the 2011 N.A. grievance, No. 3 above, the DBACGC provided "that file" on a CD-rom. The DBACGC noted that only "the summary of investigation prepared by the investigator has been removed as exempted from disclosure as a confidential work product," citing Rule V, Section 8(A)(1)(a) and (B)(3) of the Disciplinary Rules. "No other documents have been removed."
{¶ 46} As to the Judge S.W. grievance, which "was not investigated by the Dayton Bar Association's Certified Grievance Committee," the DBACGC provided "[t]he only documents in [its] possession" on the CD-rom.
{¶ 47} "As to the grievances of [R.J.G., S.D., T.J. and K.L.], which were the subject of Parisi I and Parisi II, those records relating to the committee's votes have been downloaded on to the CD rom." The DBACGC again did not disclose the "summaries of the investigator," which it said were also confidential work product under Rule V, Section 8(B)(3). The DBACGC indicated that it would respond to Parisi's expanded request separately.
{¶ 48} On April 22, 2016, the DBACGC informed Parisi that it could not provide any additional documents. Although the April 22 Letter did not indicate what records were being withheld, it stated:
While you have waived confidentiality of those matters that did not proceed to a probable cause determination or were dismissed without a probable cause determination, we do not believe that waiver applies to those matters where a formal complaint was filed and a probable cause finding made.
Additionally, based upon our further review of those rules ( Rule V, Section 2(A) and (B); Section 5(H), we believe your request for records falls within the exclusive jurisdiction of the Board of Professional Conduct of the Ohio Supreme Court, and we cannot disclose any further documents.
This action followed.
b. Items Still at Issue
{¶ 49} Comparing Parisi's requests with the DBACGC's responses, it appears that the following three categories of materials have been requested but not provided to Parisi:
a. Reports and/or Summaries: variously referred to as the "investigator's report" (April 8, 2016 email from DBACGC to Parisi), the "summary of investigation prepared by the investigator" (April 15, 2016 letter from DBACGC to Parisi), an "investigatory report" prepared by an investigator (Parisi's Motion for Sum mary Judgment *193 , filed April 13, 2017), or the "investigator's summaries of investigation" (Reply Memorandum of Respondents Dayton Bar Association in Support of Motion to Dismiss , filed July 11, 2016, at fn. 2) for Parisi I, Parisi II , and the 2011 N.A. grievance.
b. Previously disclosed documents (April 11, 2016 email from Parisi to DBACGC).
c. "[A]ll records which the DBA has concerning me, including records associated with Parisi I and Parisi II," including "all emails, text messages, and any and all electronic messages, whether made on the DBA's or an individual's electronic equipment" (April 11, 2016 email from Parisi to DBACGC).
We will deal with each in turn. Before doing so, however, we take a moment to frame the matter as it stands and to articulate some principles that apply to the disciplinary process as a whole and that guide our consideration of each category of requests.
{¶ 50} The DBACGC has moved for summary judgment on Parisi's mandamus claim for public records. It disputes that the documents requested by Parisi and withheld by it are "public records" under the PRA, because their release is barred by state law, namely the Disciplinary Rules.
{¶ 51} The DBACGC cites Rule V, Section 5(H) of the Disciplinary Rules throughout its pleadings, which provides:
No employee, appointee, or member of a certified grievance committee shall disclose to any person any proceedings, documents, or deliberations of the committee. Prior to taking office, bar counsel and each employee, appointee, or member of a certified grievance committee shall swear or affirm that he or she will abide by these rules.
Other provisions require a similar oath of confidentiality by the Commissioners of the Board of Professional Conduct, Board-appointed masters, employees of the Board, Disciplinary Counsel, and employees of the Office of Disciplinary Counsel. Rule V, Sections 1(H) and 4(F).
{¶ 52} Parisi acknowledges that the "proceedings, documents, or deliberations" of the DBACGC are confidential under Rule V, Section 5(H). She argues that Section 5(H) does not apply to documents or emails, etc., that are not produced by the DBACGC itself, but may have been produced by "an investigator, witnesses, and the like" during the DBACGC's investigation.
{¶ 53} We do not find this distinction to be supportable. The general confidentiality provision in Rule V, Section 5(H) speaks broadly of "any proceedings, documents, or deliberations," terms that we believe encompass witness statements collected or received by a CGC in the course of its "proceedings." Accord State ex rel. Vindicator Printing Co. v. Philomena , 7th Dist. Mahoning No. 90 C.A. 42, 1990 WL 197940, *5 (Dec. 5, 1990) (witness statement barred from release by previous version of the Disciplinary Rules where "the statement was still in the hands of the disciplinary committee").
{¶ 54} Likewise, emails by the members of the DBACGC concerning the subject of its "proceedings," i.e., investigations into grievances against Parisi, would also be covered by the general confidentiality provision. To construe the rule otherwise would be absurd; a construction that safeguards only the official result of an investigation but none of the unconfirmed allegations or the investigator's speculations would protect neither the public, the attorney, nor the alleged victim. In other *194 words, we do not believe that committee members are free to disclose to the public the grievances they've received and what their investigators have uncovered about those grievances, but are forbidden only from saying what the committee officially decided to do about them. All "proceedings, documents, or deliberations" are protected.
{¶ 55} This interpretation is consistent with the broad definition of confidentiality in the Disciplinary Rules, the confidentiality protection historically attaching to disciplinary proceedings, and the breadth of the rules as applied by the Supreme Court of Ohio. Section 35(D) of the current version of Rule V (containing definitions) says that the term " 'Confidential' acknowledges the oath of office of Sections 1, 4, and 5 of this rule, the necessity of confidentiality of all proceedings, documents, and deliberations of a certified grievance committee, the Office of Disciplinary Counsel, and the Board and its hearing panels." We do not think this statement allows any interpretation that would limit it the way Parisi suggests. We conclude that "all proceedings, documents, and deliberations," including witness statements and communication by an investigator or members of the committee, are confidential and their release barred by Rule V, Section 5(H).
{¶ 56} Previous versions of Rule V similarly provided that "[a]ll proceedings and documents relating to review and investigation of grievances made under these rules shall be private * * *." Everage v. Elk & Elk , 159 Ohio App.3d 220, 2004-Ohio-6186, 823 N.E.2d 516 (3rd Dist.). Under the previous rule, "[o]nce a complaint [had] been certified by a probable-cause panel, the complaint [was] available to the public. The deliberations by the probable-cause panel and the board remain confidential, however." Id. (citing former Gov. Bar R. V(11)(E)(2)(a) ). "Moreover, the confidentiality of the deliberations could not "be disclosed or waived by anyone for any reason." Id. at ¶ 8 (citing former Gov. Bar R. V(11)(E)(2)(c)(ii) ).
{¶ 57} Major changes to Rule V went into effect in 2015, before Parisi filed the public records requests at issue. Rule V was revised to "more clearly address confidentiality of proceedings and the public nature of most post-probable cause proceedings." Board of Professional Conduct, Summary of Amendments to Gov. Bar R. V [Disciplinary Procedure] and Procedural Regulations of the Board of Professional Conduct, Effective January 1, 2015 , p. 3, available at http://test.supremecourt.ohio.gov/Boards/BOC/amendments2015/amendmentSummary.pdf (accessed Nov. 13, 2017). Former Rule V, Section 11(E), which previously covered confidentiality and privacy during the disciplinary process, was rewritten as current Rule V, Section 8, which is discussed above and applied herein. See Board of Professional Conduct, Correlation Tables Gov. Bar R. V Reorganization Effective January 1, 2015 , available at http://test.supremecourt.ohio.gov/Boards/BOC/amendments2015/correlationTables.pdf (accessed Nov. 13, 2017).
{¶ 58} The Supreme Court of Ohio broadly interpreted previous versions of the confidentiality provisions to apply to records-including letters written to disciplinary counsel-that "would relate to a grievance" and therefore be exempt from disclosure. State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office , 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 30. This court held similarly broadly in Parisi's previous mandamus action against a local prosecutor. See State ex rel. Parisi v. Heck , 2d Dist. No. 25709, 2013-Ohio-4948, ¶ 11, 2013 WL 5975008, appeal cause dismissed by Supreme Court for failure to prosecute , *195 138 Ohio St.3d 1407, 3 N.E.3d 209 (2014) ("Insofar as the work product documents are related to the grievance filed against Parisi in the supreme court, they are exempted from disclosure under Gov.Bar R. V(11)(E)(1)" (emphasis added). While the provision relied upon in McCaffrey and in Parisi's earlier case was changed to clarify which documents were public, as discussed below, we do not view this change as affecting a wholesale shift away from the general policy of confidentiality in attorney disciplinary matters.
{¶ 59} Also notable is the Supreme Court's decision that the rules safeguarding the confidentiality of the disciplinary process apply not only to participants in the process, but to all attorneys. McCaffrey, supra. There the Court extended, rather than contracted, the obligation of confidentiality, saying that "the mere fact that attorneys are 'not required to take the oath set forth in Gov.Bar R. V(11)(E)(4) [now Rule V, Section 5(H) ] does not exempt them from the obligation to maintain the privacy of a disciplinary grievance prior to the certification of a complaint by a probable-cause panel." Id. at ¶ 30, quoting Disciplinary Counsel v. Pullins , 127 Ohio St.3d 436, 2010-Ohio-6241, 940 N.E.2d 952, ¶ 14. Given the broad application of the confidentiality protections in this and previous versions of the Disciplinary Rules, we cannot accept Parisi's proposed distinction between documents generated by the DBACGC and those collected or received by the DBACGC in the course of its investigation. All the "proceedings, documents, or deliberations" are confidential, and the DBACGC and its members are prohibited from disclosing them under Ohio law.
{¶ 60} With this construction in mind, we turn to the individual unfulfilled records requests at issue here.
i. Investigator's Reports / Summaries
{¶ 61} Parisi requested copies of the "investigator's report[s]" relating to the R.J.G., S.D., T.J. and K.L. grievances that were presented in Parisi I and Parisi II. She states in an affidavit that she obtained one such report, authored by Jonathon Beck, but has not received the other three reports authored by "attorney investigator Joe Moore, regarding [T.J.] and others," including R.J.G. and S.D., from the DBACGC. The DBACGC also withheld a copy of the "summary of investigation prepared by the investigator" for the 2011 N.A. grievance that did not proceed to probable cause, although Parisi may already have this report. See Exhibit A to Parisi's May 24, 2017 Relator's Reply Memorandum (discussing Beck's investigation of the N.A. and K.L. grievances).
{¶ 62} The DBACGC states that "[t]he only documents not provided to Ms. Parisi in response to her February 16, 2016 request (as clarified and confirmed with Ms. Parisi) were the investigator's summaries of investigation." Parisi argues that she has not asked for the "summary of investigation" but the documents that the summary summarizes, including, presumably, the investigator's reports.
{¶ 63} Much confusion in this case, and indeed, in this interaction between the parties, appears traceable to this unresolved difference in understanding. Not having reviewed any documents that were produced or withheld except to the extent they were filed within the slim record here, it is unclear to this court whether the requested "investigator's report" is the same thing as the withheld "investigator's summary of investigation," and further, whether one or the other is the same thing as the "summary of investigation prepared by the relator " of the grievance complaint (i.e., the bar association or its grievance committee, as distinct from an investigator retained or assigned by the bar association). While this may appear to be a semantic question, the distinction is relevant *196 because the Disciplinary Rules protect the "summary of investigation prepared by the relator" differently than "other investigatory material."
{¶ 64} Rule V, Section 8(B)(3) provides that "[t]he summary of investigation prepared by the relator shall be confidential as workproduct of the relator." The DBACGC's position appears to be that the requested "investigator's report" is the same thing as the withheld "investigator's summary of investigation," which is the same thing as the "summary of investigation prepared by the relator" that is confidential workproduct.
{¶ 65} Parisi makes the distinction noted above, arguing for release of "all other investigatory material" summarized in the summary, presumably including the investigator's reports. She refers the court to the latter portion of Rule V, Section 8(B)(3), which states:
All other investigatory materials and any attachments prepared in connection with an investigation conducted pursuant to Section 9 of this rule or submitted with a complaint filed pursuant to Section 10 of this rule shall be discoverable as provided in the Ohio Rules of Civil Procedure.
The list of "sufficient investigatory materials" in Section 10 contains both investigation reports and summaries: "The [submitted] materials may include investigation reports, summaries, depositions, statements, and any other relevant material." Rule V, Section 10(F).
{¶ 66} Upon review of the Disciplinary Rules and the materials before us, we conclude that the requested investigator's reports are "records the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). If the reports are indeed the "summary of investigation prepared by the relator" as the DBA and DBACGC argue, then they are "confidential * * * workproduct of the relator" and barred from release by Rule V, Section 8(B)(3), in addition to the general confidentiality provision of Rule V, Section 5(H). If the reports are not workproduct but "other investigatory materials" that are/were discoverable during disciplinary proceedings as Parisi argues, then they remain confidential for purposes of this public records request by virtue of Rule V, Section 5(H).
{¶ 67} We make this determination without reviewing the documents in camera for three reasons. First, neither party has filed a motion asking us to review them in camera. Second, we are cognizant that ordering the DBACGC to produce documents relating to the attorney disciplinary process would implicate, and possibly cause its members to violate their oath of confidentiality. Rule V, Section 5(H). Third, the Supreme Court of Ohio has held that an in camera review is unnecessary when the question before the court is a particular document's status under the law, rather than its content. Salemi v. Cleveland Metroparks , 145 Ohio St.3d 408, 2016-Ohio-1192, 49 N.E.3d 1296, ¶ 33. Here, the parties agree generally about the content of the documents-investigator's reports and records related to grievances against and/or investigations of Parisi-and we are able to determine the status of this category of documents without an in camera review of each document's details.
Confidential Workproduct
{¶ 68} The DBACGC treats the requested investigator's reports as confidential workproduct. Rule V, Section 8(B)(3). Parisi argues that any workproduct protection afforded the "summary of investigation prepared by the relator" by that rule ended when the disciplinary litigation ended, citing the recent Supreme Court case of *197 State ex rel. Caster v. Columbus , Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-8394, 2016 WL 7448756. Caster does not make as sweeping a pronouncement as Parisi suggests. In Caster , the Court dealt "primarily with * * * the specific-investigatory-work-product exception in R.C. 149.43(A)(2)(c), which * * * includes 'information assembled by law enforcement officials in connection with a probable or pending criminal proceeding.' " Caster at ¶ 19, quoting State ex rel. Steckman v. Jackson , 70 Ohio St.3d 420, 435, 639 N.E.2d 83 (1994) ; see also R.C. 149.43(A)(1)(h) ("confidential law enforcement investigatory records" as defined in R.C. 149.43(A)(2)(c) are not public records).
{¶ 69} This is not the exemption invoked here. The DBACGC instead relies on the exemption in R.C. 149.43(A)(1)(v) for "[r]ecords the release of which is prohibited by state or federal law," which includes the workproduct protection set out in the Disciplinary Rules. Parisi has not presented, and we have not found, any authority for extending Caster into civil or disciplinary proceedings. Caster's analysis, largely related to Crim.R. 16 and criminal defendants, does not apply here.
{¶ 70} Further, even if the workproduct protection had expired pursuant to Caster , the summary of investigation would not transform from a document specifically protected from production to a freely-available public record, as Parisi argues. Rather, it would continue to be protected by the general confidentiality provisions of Rule V, Section 5(H).
Other Investigatory Materials
{¶ 71} If the investigator's reports are not confidential workproduct, but are "other investigatory material," different standards apply. As discussed above, all "proceedings, documents, or deliberations" of a certified grievance committee are covered by the broad and overarching general confidentiality provision set out in Rule V, Section 5(H) and are barred from disclosure. Rule V also specifically addresses confidentiality of other investigatory materials during two phases of disciplinary proceedings: the time period prior to a probable cause finding, and the time period after. "Prior to a determination of probable cause by the Board, all proceedings, documents, and deliberations relating to review, investigation, and consideration of grievances shall be confidential" unless an exception applies. Rule V, Section 8(A)(1). However, "[f]rom the time a complaint has been certified to the Board by a probable cause panel, the complaint and all subsequent proceedings conducted and documents filed in connection with the complaint shall be public," subject to other exceptions.
{¶ 72} Parisi argues for two exceptions to these provisions, based on two exceptions to the specific rules. First, she asserts that she waived confidentiality as to the proceedings, which is an exception to the pre-probable cause time period. Second, she argues that the materials are "discoverable" and are therefore public records, which is an exception to the post-probable cause time period. Neither argument has merit.
Waiver Exception
{¶ 73} Before a probable cause finding and certification of a complaint to the Board of Professional Conduct, "all proceedings, documents, and deliberations relating to review, investigation, and consideration of grievances," as well as "all investigatory materials prepared in connection with an investigation conducted pursuant to Section 9 * * * or submitted with a complaint filed pursuant to Section 10," are confidential, with some exceptions. Rule V, Section 8(A)(1), Section 8(A)(3).
*198 {¶ 74} One exception is "[w]here the respondent expressly and voluntarily waives confidentiality of the proceedings." Rule V, Section 8(A)(1)(a). Parisi argues that as the respondent in the disciplinary proceedings she has waived the confidentiality of the proceedings. Her statements to the DBACGC in the record so reflect.
{¶ 75} However, the waiver exception appears only in the section covering "Proceedings Prior to Probable Cause." Neither of Parisi's disciplinary cases are in that posture, and the waiver exception therefore does not apply. See Dayton Bar Assn. v. Parisi , 131 Ohio St.3d 345, 2012-Ohio-879, 965 N.E.2d 268 (resolving Parisi I on March 8, 2012); Parisi v. Heck , S.D.Ohio No. 3:14-CV-346, 2015 WL 3999300, *4 (July 1, 2015), report and recommendation adopted , S.D.Ohio No. 3:14-CV-346, 2016 WL 98600, aff'd , 666 Fed.Appx. 384 (6th Cir.2016) (noting that second grievance was scheduled for a formal hearing before the Board in Parisi II , which would have occurred only after a finding of probable cause).
{¶ 76} Even if the waiver exception applied, Parisi would not be entitled to the documents she seeks. The exception further states that "[a] waiver of confidentiality does not entitle the respondent or any other person access to documents or deliberations expressly designated as confidential under this section." Id. "[A]ll investigatory materials prepared in connection with an investigation" are expressly designated as confidential, and would therefore not be disclosed.
{¶ 77} We conclude that Parisi is not entitled to the investigator's reports by virtue of her waiver of confidentiality.
Discoverability
{¶ 78} After there has been a finding of probable cause, Rule V, Section 8(B)(3) provides that "other investigatory materials" are discoverable under the Rules of Civil Procedure. Parisi argues that "discoverable" means that the documents are not confidential and should be provided to her upon request. She argues that "[t]he language of Gov. Bar R. V(B)(3) could not be clearer. It states 'all other investigatory materials' are discoverable, which means they are not confidential, and are properly subject to a public records request."
{¶ 79} We disagree with Parisi's conclusion. First, "[d]iscovery is neither a public process nor typically a matter of public record." United States v. Anderson , 799 F.2d 1438, 1441 (11th Cir.1986), cert. denied sub. nom Tribune Co. v. United States , 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 760 (1987), citing Seattle Times Co. v. Rhinehart , 467 U.S. 20, 32-34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) and Gannett Co. v. DePasquale , 443 U.S. 368, 396, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (Burger, C.J., concurring). Discovered materials were historically unavailable to either the public or the press. Id. " 'Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.' " State ex rel. WHIO-TV-7 v. Lowe , 77 Ohio St.3d 350, 354, 673 N.E.2d 1360 (1997), quoting Anderson at 1441,. In Lowe , the Supreme Court of Ohio rejected a similar argument that documents disclosed by a prosecutor during discovery automatically became public records under R.C. 149.43 by virtue of their disclosure. We similarly disagree that "discoverable" means "public" in this context.
{¶ 80} Second, Parisi's argument conflates her status as a respondent in the disciplinary matters, and her status as a member of the public in this action. She is not seeking discovery of materials as a party to her disciplinary cases under the *199 Rules of Civil Procedure, as those cases are already resolved; she has filed a separate public records request as a member of the public under R.C. 149.43. Setting aside the fact that the discoverability provision did not exist during Parisi I and Parisi II and was apparently unavailable to her at that time,[9] which we discuss in paragraphs 83-84, we are aware of no provision that would allow a member of the public to submit discovery requests in a grievance proceeding, or further, to demand access to discovery that was not made, nor available even to the disciplined attorney, in closed disciplinary cases.
{¶ 81} In other words, the fact that sensitive, otherwise confidential investigatory materials may be demanded and released to an attorney facing professional discipline during an ongoing adversarial proceeding before a Supreme Court Board does not mean that the same documents must be provided to any member of the public, upon request, at any time. See generally Lowe at 354, 673 N.E.2d 1360.
{¶ 82} Rule V, Section 8(B) appears to recognize this, specifically describing as "public" only "the complaint and all subsequent proceedings conducted and documents filed in connection with the complaint," and only after the complaint has been certified to the Board by a probable cause panel. (Emphasis added.) "Other investigatory materials" do not fall within this category of "public" documents and proceedings. They are also not automatically made public by the fact that an investigated attorney may seek access to them during active disciplinary proceedings. We conclude that, at this time, after the disciplinary matters against her were resolved, Parisi is not entitled to the investigator's reports by virtue of the discovery provision in Rule V, Section 8(B)(3).
{¶ 83} Finally, we note that Parisi unsuccessfully sought access to the investigator's reports during disciplinary proceedings in Parisi II. The record contains a certified copy of an Order filed on April 29, 2013 in Case No. 12-060 before the Board of Commissioners on Grievances and Discipline [now Board of Professional Conduct] in In re: Complaint Against Georgianna I. Parisi, Respondent, Dayton Bar Association, Relator. The Order denies Parisi's "Motion to Compel Investigative Reports," stating: "The panel chair * * * finds there is no provision in Gov. Bar R. V, Section 4(I) that could be construed to designate investigatory reports prepared by a certified grievance committee as a public record and Respondent is not entitled to review or copy investigatory reports * * *."
{¶ 84} The Order may be referring to Rule V, Section 3(I), which became effective in 2012:
(I) Public Records. Except as provided in Section 11(E) of this rule and by state and federal law, documents and records of the Board, the Secretary, and the Disciplinary Counsel, including budgets, reports, and records of income and expenditures, shall be made available for inspection to any member of the general public at reasonable times during regular business hours. Upon request, a person responsible for the records shall make copies available at cost, within a reasonable period of time. The records shall be maintained in a manner that they can be made available for inspection.
Rule V, Section 3(I), eff. Jan. 1, 2012; Gov. Bar R. XX, Section 2(JJJJ). A similar provision still exists in the current version of *200 Rule V, but it is now titled "Administrative and Financial Records" and directs requests to be made under Superintendence Rule 45. Rule V, Section 8(F). We conclude that Parisi is not entitled to the investigator's reports under current Section 8(F) and hold that we cannot review the Board's determination under the previous version of Rule V.
Summary of the Court's Conclusions as to the Investigator's Reports
{¶ 85} In summary, we conclude that the requested "investigator's reports" are barred from disclosure as either a "summary of investigation prepared by the relator" under Rule V, Section 8(B)(3) or as confidential "proceedings, documents, or deliberations" under Rule V, Section 5(H). Neither Parisi's waiver of confidentiality nor the discoverability of investigatory material during a disciplinary matter overrides the provisions requiring the materials to remain confidential with respect to a public records request.
ii. "Previously Disclosed" Documents
{¶ 86} In her April 11, 2016 expanded records request, Parisi said:
I also wish to note that I would hope that documents provided to me should be more inclusive, than exclusive. Mr. Freeze states that he believe[s] that exempt documents had already been provided to my counsel or me. I would appreciate if those "previously disclosed" documents be provided pursuant to this request so that there is no confusion.
This request appears to refer to the DBACGC's April 8, 2016 letter, which refers to Parisi's federal case and the "grievance matters which proceeded to the Ohio Supreme Court."
{¶ 87} This court has not reviewed the documents the DBACGC "previously provided" to Parisi, nor has Parisi reasonably identified them. See State ex rel. Glasgow v. Jones , 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 17 ("[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue") (internal citations and quotations omitted). However, as they have been "previously provided" to Parisi, the request to compel their production is moot. State ex rel. DiFranco v. S. Euclid , 138 Ohio St.3d 378, 2014-Ohio-539, 7 N.E.3d 1146, ¶ 1 (mandamus claim for production mooted by production of documents).
iii. All Records including Electronic Messages and "Non-Committee" Documents
{¶ 88} Parisi asked for "all records the DBA has concerning me, including records associated with Parisi I and Parisi II," and including "all emails, text messages, and any and all electronic messages, whether made on the DBA's or an individual's electronic equipment." In arguing for production of these documents, she argues that she is entitled to other documents gathered or produced in the course of the Parisi I and Parisi II investigations (i.e., not the Summary of the investigation, but the documents the Summary summarizes), as well as "non committee rendered documents, such as letters, emails, and other communications, produced by an investigator, witnesses, and the like," contrasted with documents prepared by the DBACGC. The parties have also disagreed whether "handwritten notes" or "personal notes" are exempted from disclosure.
{¶ 89} These records, to the extent that they are reasonably identified, are barred from disclosure by the general confidentiality provision of Rule V, Section 5(H). See Glasgow, supra , at ¶ 17 (requestor must reasonably identify records). Our analysis from the preceding sections would apply to preclude their release. The *201 DBACGC is not required to produce them, in whatever handwritten, typed, or electronic form they currently exist.
c. New Requests in the Pleadings
{¶ 90} In Parisi's motion for summary judgment, she makes two new requests for documents. First, she notes that "[s]ince the filing of this Mandamus complaint, Relator has learned that the Respondents have conducted a number of public activities involving her. Specifically, Relator notes that the Respondents had a specific Bar/Bench Conference about her case and her, and that it was video taped." Motion for Summary Judgment filed April 13, 2017, p. 6. She asks that all publicly-presented documents and video tapes be provided to her. Id.
{¶ 91} Parisi also asserts that "she requested all emails, text messages, and any and all other communications, including voice mails, which occurred AFTER the complaints against her were certified." (Emphasis in original.) Id. We did not find such a distinct request in the materials before us, and Parisi has not directed our attention to it by way of a citation. The "expanded" request in Parisi's April 11, 2016 email does not temporally limit her request to those communications after certification. Rather, she simply sought "all records which the DBA has concerning me, including those records associated with Parisi I and Parisi II."
{¶ 92} These requests are denied, as they have not been properly requested. " R.C. 149.43(C) requires a prior request as a prerequisite to a mandamus action." State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office , 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 20, citing State ex rel. Taxpayers Coalition v. Lakewood , 86 Ohio St.3d 385, 390, 715 N.E.2d 179 (1999) and Strothers v. Norton , 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 14.
{¶ 93} Additionally, with respect to the request for post-certification communications, the same analysis discussed in the previous sections would apply. All "proceedings, documents, or deliberations" related to the investigated grievances against Parisi are covered by the general confidentiality provision of Rule V, Section 5(H). Parisi offers no authority for the proposition that the statements made after the DBACGC concluded its investigation can be made public, and we decline to create such a rule in contravention of the plain language of Section 5(H).
C. Summary of Findings
{¶ 94} Upon review of the public records requests and the responses thereto, as well as the record of this case and the standards pertaining to the Public Records Act, the Public Access Rules, and the Disciplinary Rules, we conclude that no genuine issues of material fact remain in this case. Parisi cannot show, as a matter of law, that she has a clear legal right to confidential proceedings, documents, or deliberations of the DBACGC that are related to grievances filed against her as part of the disciplinary process. The DBACGC is entitled to summary judgment on Parisi's mandamus claim seeking to enforce a public records request.
IV. CONCLUSION
{¶ 95} The preliminary motions are resolved as follows:
• The Motion for Leave to File Memorandum of Additional Authorities filed on January 30, 2017 is SUSTAINED.
• The Motion to Strike Exhibits contained within the Respondents' Reply Memorandum and/or Memorandum Contra Relator's Motion for Summary Judgment filed on May 10, 2017 is SUSTAINED in part and *202 OVERRULED in part, as set out above.
{¶ 96} The dispositive motions are resolved as follows:
• The Motion to Dismiss filed by the Dayton Bar Association and the Dayton Bar Association Certified Grievance Committee on June 17, 2016, and converted into a motion for summary judgment by this court is hereby SUSTAINED. Judgment is ENTERED for the Respondents.
• The Motion for Summary Judgment filed by Georgianna I. Parisi on April 13, 2017, is OVERRULED. Parisi's requests for a peremptory writ, and for statutory damages and court costs, are OVERRULED.
{¶ 97} The request for a writ of mandamus is DENIED and this action is DISMISSED.
SO ORDERED.

In their final filing, Respondents assert that "[f]actually, there is no basis for any action in mandamus against the Dayton Bar Association, outside any capacity as a certified grievance committee." Respondents' Reply Memorandum , filed May 10, 2017. The DBA did not move for summary judgment on this basis. Additional details are discussed below. See footnote 8, infra.

After this case was filed, the Supreme Court amended Section 4(B) of the Disciplinary Rules, effective March 1, 2017. Gov. Bar R. XX, Section 2(EEEEE). This change is not relevant to this case and does not affect our analysis.

A certified grievance committee also may review a grievance "that alleges facts that, if substantiated, would indicate that a judicial officer or attorney is mentally ill, is suffering from alcohol and other drug abuse, or is suffering from a disorder." Rule V, Section 9(C)(1). From the limited information in the record, this provision appears to be inapplicable and is omitted from our discussion.

The Board of Commissioners on Grievances and Discipline is now known as the Board of Professional Conduct. Cincinnati Bar Assn. v. Wiest , 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 2.

Our analysis under the Public Access Rules would be somewhat different but lead to the same result. For instance, a "document exempt from disclosure under state, federal, or the common law, or as set forth in the Rules for the Government of the Bar," including Rule V discussed herein, appears to be exempt from release. Sup.R. 44(G)(2)(a) ; see also FAQs , supra , at 2 ("If a document falls under one of the exemptions, it simply means it is not a 'case document' or 'administrative document' for purposes of the Public Access Rules-i.e., it is not subject to a request for public access"). In addition, a mandamus petitioner under the Public Access Rules would be required to show the lack of an adequate remedy in the ordinary course. See State ex rel. Dreamer v. Mason , 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, ¶ 15 (parties not proceeding under the PRA "are not entitled to the benefit of precedent obviating the requirement of the lack of an adequate legal remedy in public-records mandamus cases"). Here, Parisi had, and exercised, her adequate remedy in that she sought a copy of the investigator's reports by motion during her disciplinary proceedings in Parisi II. See paragraphs 83-84, infra. Success on the motion is not a requirement of an adequate remedy. See Dreamer at ¶ 13 ("Insofar as appellees have already unsuccessfully invoked one of these alternate remedies by seeking to obtain the requested records in discovery in the criminal proceedings, the same issue cannot be relitigated in mandamus"). If we were to review this case under the Public Access Rules, we could also find that Parisi was not entitled to records.

Which clients were at issue in which case is unclear. A letter by Jonathon L. Beck filed as Exhibit A to Parisi's May 24, 2017 Relator's Reply Memorandum indicates that the 2012 Complaint arose out of grievances concerning N.A. and K.L., while suggesting that the previous matter concerned R.J.G. and T.J.

"Parisi agreed, pursuant to a settlement agreement, to register her license to practice in the state of Ohio as inactive for three years in exchange for dismissal of the complaint." Parisi v. Heck , 666 Fed.Appx. 384, 386 (6th Cir.2016). A footnote in the same opinion quotes Parisi as noting that "[p]er the settlement agreement, Parisi can re activate [sic] her Ohio law license * * * after September 1, 2016." Id. at 388, fn. 2.

It is not clear whether this response was sent by counsel on behalf of the DBA, the DBACGC, or both. Parisi's initial request was directed to the DBA. The first two responsive letters dated March 14, 2016 and March 29, 2016 both appear to respond on behalf of the DBA alone. However, the April 8, 2016 response letter says: "Your request, as we understand it, seeks records maintained by the Dayton Bar Association's Certified Grievance Committee." The April 15, 2016 response letter notes that "Ohio courts have not addressed the issue of whether a local bar association or certified grievance committee is a 'public office' * * *." That letter continues on to refer to both the DBA and the DBACGC, arguably interchangeably. The April 22, 2016 response letter refers only to the DBACGC. We refer to the DBACGC for the reasons articulated in paragraph 14 above.

As discussed above, Parisi I resolved in March 2012 and Parisi II resolved in September 2013. The provision on discoverability, Rule V, Section 8(B)(3), came into effect on January 1, 2015. Gov. Bar R. XX, Section 2(UUUU).